**TENNECO RESINS, INC., Tenneco Eastern Realty, Inc., Appellants,**

v.

**REEVES BROTHERS, INC., Appellee.**

**Appeal No. 84–973.**

United States Court of Appeals, Federal Circuit.

Jan. 10, 1985.

Caspar C. Schneider, Jr., Davis, Hoxie, Faithfull & Hapgood, New York City, argued for appellants. With him on the brief were Thomas E. Spath, Richard P. Ferrara and Arnold B. Dompieri, New York City.

S. Leslie Misrock, Pennie & Edmonds, New York City, argued for appellee. With him on the brief were Stanton T. Lawrence, III, Joseph V. Colaianni and Stephen M. Masucci, New York City.

Before MARKEY, Chief Judge, DAVIS and BISSELL, Circuit Judges.

DAVIS, Circuit Judge.

This is an appeal from an order of the District Court for the District of Maryland, Judge Herbert F. Murray, denying appellant Tenneco's[1] motion to amend its reply to appellee Reeves Brothers' counterclaim. This court earlier denied Reeves' motion to dismiss the appeal. *Tenneco Resins, Inc. v. Reeves Brothers, Inc.*, 736 F.2d 1508 (Fed.Cir.1984). We now affirm the decision below and remand for further proceedings.

I

The main litigation approaches its twelfth anniversary. It has, in the course of the preceding eleven years, involved three companies, three district courts and four United States patents. The parties have gone to considerable lengths to outline the complex nuances of this case's protracted procedural history. The bare skeleton is this:

On March 23, 1973, Wm. T. Burnett & Co. (no longer involved) brought suit against Tenneco and Reeves in the Southern District of New York, seeking a declaratory judgment that one of Reeves' patents and two of Tenneco's patents were invalid and not infringed. The patents at issue were United States Patent Nos. 3,325,573 (Reeves' '573 patent), 3,296,658 and 3,476,-845 (Tenneco's '658 and '845 patents). The claimed inventions concern the processes and machinery involved in the production of "round block" polyurethane foam.[2]

Soon after Burnett filed suit, Tenneco and Reeves separately brought patent infringement actions against Burnett in the District of Maryland. In the summer of 1973, Reeves brought an action, also in Maryland, against Tenneco under 35 U.S.C. § 291 ("Interfering Patents"), charging that certain claims in Tenneco's '845 patent interfered with claims in Reeves' '573 patent. Tenneco's answer to Reeves' complaint denied interference, but neither alleged nor referred to the invalidity of Reeves' '573 patent.

No significant changes occurred in any of these proceedings until late in 1974, when the district court in New York transferred Burnett's declaratory judgment actions from New York to Maryland. At this point, all of the suits among the three companies were pending in Maryland. Judge Murray of that district court ordered the actions consolidated for the purpose of discovery, which began early in 1975.

In April 1975, Tenneco acquired another patent, United States Patent No. 3,874,988 (Tenneco's '988 patent), which claimed the round block polyurethane foam product. Tenneco brought suit almost immediately against Burnett in Maryland and Reeves in the Western District of North Carolina, claiming infringement of Tenneco's '988 patent. Reeves answered Tenneco's com-

---

1. Initially, this case involved Tenneco Resins, Inc.'s predecessor, Tenneco Chemicals, Inc. In 1983, the parties stipulated to the change of name and the addition of Tenneco Eastern Realty, Inc. as a defendant to one of the counterclaims. These parties will be referred to collectively as "Tenneco."

2. Essentially, this is polyurethane foam molded in a cylindrical form which may be sliced into sheets, *e.g.*, for use as garment lining.

plaint and asserted two counterclaims: (1) seeking declaratory judgment that Tenneco's newly issued '988 patent was invalid and not infringed; and (2) for a judgment that Reeves' '573 patent was (a) valid and (b) infringed by Tenneco. Tenneco's reply to the second counterclaim denied infringement of Reeves' '573 patent, but conspicuously did not assert the invalidity of Reeves' '573 patent.

In an effort to consolidate the cases involving Reeves and Tenneco in one district, Reeves amended its answer to Tenneco's infringement complaint (in North Carolina) by adding a third counterclaim identical to its interference complaint (under § 291) against Tenneco in Maryland. Judge Murray in Maryland dismissed the Reeves interference action without prejudice in favor of the third counterclaim then pending in North Carolina. In May 1976, Tenneco replied to the third counterclaim as it had to the original suit, by simply denying interference (and again failing to challenge validity).

By this time, Burnett and Reeves had settled their differences; all litigation between Burnett and Tenneco was centered in Maryland, while the Tenneco-Reeves dispute was before Judge MacMillan in North Carolina.

In November 1976, Tenneco and Reeves filed pretrial briefs in North Carolina setting forth proposed findings of fact and conclusions of law on the issues involved in Tenneco's complaint and Reeves' counterclaims. In the portions of Tenneco's pretrial briefs discussing Reeves' interference and infringement counterclaims, Tenneco alleged that Reeves' '573 patent was invalid because the drawings did not disclose every feature of the claimed invention as required by Patent Office rules, and because the patent did not set forth the "best mode" for producing round block polyurethane foam as required by 35 U.S.C. § 112. While the court considered these briefs, the parties continued discovery, mainly of third parties. In August 1977, Reeves submitted a pretrial outline in North Carolina. How-

ever, Judge MacMillan never issued a pretrial order.

Seeking to consolidate similar issues, Judge MacMillan in North Carolina transferred Reeves' second and third counterclaims to Maryland where the Tenneco-Burnett suit was still pending. Judge Murray in Maryland stayed the interference counterclaim pending determination of the validity of Tenneco's '845 patent. Judge MacMillan then stayed the remaining portions of the case in North Carolina (Tenneco's claim and Reeves' first counterclaim) pending the outcome of events in Maryland.

On December 5, 1977, Judge Murray commenced a trial of related issues in the two pending suits before him (*i.e.*, the validity of Tenneco's '988 patent and the infringement by Burnett of Tenneco's '658, '845 and '988 patents). On January 25, 1978, at the conclusion of Tenneco's case-in-chief, Reeves and Burnett moved to dismiss the case pursuant to Fed.R.Civ.P. 41(b). On February 16, 1978, in an opinion from the bench, Judge Murray granted the motion to dismiss. He concluded that Tenneco's '658 patent issued on an "inoperative disclosure," contrary to 35 U.S.C. § 112 and was therefore invalid; the judge also ruled that Tenneco's '988 patent was invalid because, *inter alia*, it was anticipated under 35 U.S.C. § 102(e). The court further held that Tenneco failed to prove infringement of its '845 patent claims, but did not draw legal conclusions as to that patent's validity.

In June 1978, Tenneco sought to amend its reply to Reeves' interference counterclaim (in Maryland) by adding the defense of invalidity and unenforceability of Reeves' '573 patent. In his decision on that motion Judge Murray noted that the Federal Rules of Civil Procedure allow liberal amendments of pleadings when justice so requires. Fed.R.Civ.P. 15(a). The court denied Tenneco's motion for three reasons: (1) Tenneco had waited five years since the original complaint before interjecting those new issues into the case, and had foregone numerous opportunities to assert the invalidity of Reeves' '573 patent; (2) Reeves had

conducted lengthy and expensive discovery based on the premise that the validity of '573 was not at issue; and (3) the amendment would further delay the already protracted proceedings. *Tenneco Chemicals, Inc. v. Wm. T. Burnett & Co.*, 213 USPQ 104, 116 (D.Md.1980).

Tenneco appealed Judge Murray's decision dismissing the case, but did not appeal the decision denying the motion to amend. While the appeal was pending, Burnett and Tenneco settled their differences. Then, in June 1982, the Fourth Circuit affirmed Judge Murray's decision as to Tenneco's '988 patent, reversed as to Tenneco's '658 patent, and remanded. *Tenneco Chemicals, Inc. v. Wm. T. Burnett & Co.*, 691 F.2d 658 (4th Cir.1982).

Because the '988 patent was no longer in contention, only two issues remained to be resolved between the remaining parties: Reeves' interference counterclaim in Maryland, and Reeves' infringement counterclaim in North Carolina. The parties each engaged in efforts to consolidate Reeves' counterclaims, Tenneco in North Carolina, Reeves in Maryland. Judge MacMillan, deferring to Judge Murray's experience with the matters involved in this litigation, transferred the infringement counterclaim to Maryland.

Prior to trial on those remaining issues, Tenneco sought once again (July 1983) to amend its reply to the counterclaims under Rule 15(a) to include the invalidity of Reeves' '573 patent. Judge Murray denied this motion for substantially the same reasons as he denied Tenneco's 1978 motion to amend. The court likewise noted that any public interest in determining the validity of Reeves' '573 patent did not overcome the prejudice to Reeves if that validity issue were suddenly and belatedly interjected into the litigation. The current appeal is from this decision.

On June 13, 1984, Reeves' '573 patent expired. The parties have concluded that Reeves' interference counterclaim is moot, as there are no longer "interfering patents"; Tenneco does not press its appeal of Judge Murray's order as it applies to Reeves' interference counterclaim. We consider, therefore, only Tenneco's motion to amend its reply to Reeves' infringement counterclaim.

## II

In the major case construing Rule 15(a),[3] *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), the Supreme Court interpreted the rule's somewhat arcane command that "leave [to amend] shall be freely given when justice so requires." The Court said:

> If the underlying facts or circumstances relied upon by a [party] may be a proper subject for relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith, or dilatory motive on the part of movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc. —the leave sought should, as the rules require, be "freely given." *Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court* .... [Emphasis added.]

*Id.* at 182, 83 S.Ct. at 230.

■■■ In applying this guideline, lower courts have adhered to several criteria. Of course, the decision whether or not to allow the amendment of a pleading rests with the sound discretion of the trial court, and may be overturned only if the court abuses that discretion. *Woodson v. Fulton*, 614 F.2d 940, 943 (4th Cir.1980); *Mooney v. Vitolo*,

---

**3.** The relevant portion of Rule 15(a) states:

(a) Amendments. A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not

been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

435 F.2d 838 (2d Cir.1970) (*per curiam*). One major factor which the trial court should take into account is the possibility of prejudice to the adverse party. *Mercantile Trust Co. N.A. v. Inland Marine Products Corp.*, 542 F.2d 1010 (8th Cir. 1976); *Rogers v. Valentine*, 426 F.2d 1361 (2d Cir.1970). Another element bearing on the trial court's discretion is the passage of time; while some courts have been reluctant to deny a motion to amend merely because delayed (*Howey v. United States*, 481 F.2d 1187 (9th Cir.1973)), other courts have pointed out that "delay becomes fatal at some period of time." *Chitimacha Tribe of Louisiana v. Harry L. Laws Co.*, 690 F.2d 1157 (5th Cir.1982), *cert. denied,* — U.S. ——, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983). To the same effect, see *Woodson v. Fulton, supra* (leave to amend "may be denied for undue delay"). These two factors—delay and prejudice—reinforce each other: "[T]he risk of substantial prejudice increases with the passage of time." 6 Wright & Miller, Federal Practice and Procedure § 1488 at 439 (1971). "If the [issue] lurks in the case, vacillation can cause the other party irreparable injury." *Strauss v. Douglas Aircraft Co.*, 404 F.2d 1152 (2d Cir.1968).

### III

■ The time factor is of critical importance here. Reeves first placed its '573 patent in issue in July 1973 when it claimed interference between that patent and Tenneco's '845 patent. Tenneco denied the interference, but did not then raise the validity of Reeves' '573 patent as a question in that case. Tenneco has had several opportunities since that time to interpose the question of the validity of Reeves' '573 patent. It could have done so in 1975 when Reeves brought its infringement action in North Carolina, and it could have done so in its reply to the interference counterclaim. Tenneco's motion to amend its reply in 1978 (to assert invalidity) does not toll the running of the clock, because it had the opportunity to appeal Judge Murray's denial of that motion to the Fourth Circuit, but did not do so. In sum, "A litigant's failure

to assert a claim as soon as he could have is properly a factor to be considered in deciding whether to grant leave to amend." *Carson v. Polley*, 689 F.2d 562, 584 (5th Cir.1982); *see also, Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 327 n. 1, 91 S.Ct. 795, 800 n. 1, 28 L.Ed.2d 77 (1971) (leave to amend properly denied when party had notice of the substance of opposing party's claim but failed to respond).

Though it is most unusual for patent attorneys to fail to couple claims of patent invalidity with a defense of noninfringement, Tenneco has never given a satisfactory reason why it did not do so at all from 1973 to 1978, why it failed at that time to appeal the refusal to add this issue, and why it waited until July 1983 to try again. Reeves suggests a self-serving reason for Tenneco's delay (a relationship between the validity of Reeves' '573 patent and that of Tenneco's own patents), but we need not speculate. The stark fact is that Tenneco simply has not explained or justified the long delay.

At this late date, and after several opportunities foregone by Tenneco, Reeves' burden of demonstrating prejudice is light. Judge Murray found in his 1978 order denying the first motion to amend, incorporated in the decision now on appeal, that Reeves would suffer prejudice from this amendment because of the need for new discovery. Possible witnesses may have dispersed and at least one has died. Memories fade, documents are lost or destroyed. The trial court may properly consider the possibility of prejudice to a party stemming from the burden of additional discovery after a long delay. *Troxel Mfg. Co. v. Schwinn Bicycle Co.*, 489 F.2d 968, 971 (6th Cir.1973), *cert. denied,* 416 U.S. 939, 94 S.Ct. 1942, 40 L.Ed.2d 290 (1974). Tenneco argues vociferously that any additional discovery would be minimal because Reeves has already deposed those involved. Judge Murray found otherwise, however, and his decade of experience with this case is not to be lightly brushed aside. He is better able to estimate the effect of Tenne-

co's proposed amendments on pretrial proceedings, and his finding that added discovery would place a burden on Reeves was not an abuse of his discretion.

Judge Murray also acted within his discretion to prevent any further delay of a final resolution in this case. "A busy district court need not allow itself to be imposed upon by the presentation of theories seriatim." *Freeman v. Continental Gin Co.*, 381 F.2d 459 (5th Cir.1967). In light of Tenneco's protracted delay, Tenneco's repeated failure to raise the validity issue when it had the opportunity to do so, the possibility of a new round of discovery over matters decades past, and the prospect of a thirteenth year with this case on the Maryland court's docket, Judge Murray acted within his sound discretion.

Tenneco offers three arguments which it claims supercede the concerns we have enumerated. First, Tenneco relies heavily on the principle that "the purpose of the pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). It points out that, absent reversal of Judge Murray's decision, the trial court will not be in a position to consider the validity of Reeves' '573 patent on the merits. We note, however, that, if the "purpose" of a pleading is to facilitate consideration of matters on the merits, then Tenneco, and not the court, has violated that principle. Tenneco failed to place the validity of the '573 patent in issue, thus preventing a consideration of the matter. That decision was Tenneco's, and Tenneco's alone.[4] Justice does not here require that Tenneco be permitted to by-pass its inordinate and unexplained delay which has prejudiced both Reeves and the district court.

Tenneco also points out that it raised the issue of validity in its pretrial brief in 1976 before Judge MacMillan in North Carolina.

This pretrial brief, however, never became a pretrial order, and thus the issues discussed therein never formally entered the case. Moreover, during subsequent discovery, counsel for Reeves objected when counsel for Tenneco questioned a witness on matters concerning the validity of the patent, and Reeves stressed that Tenneco must first amend its pleadings to assert invalidity. Nonetheless, Tenneco waited a full year before seeking leave to amend its reply. Reeves may well have assumed that Tenneco had chosen to drop the matter and guided its litigation strategy accordingly. The single mention in the pretrial brief does not overcome the initial five years of delay, and a subsequent six years of acquiescence.

Tenneco also points to the five-year stay in North Carolina and claims that it had no opportunity to amend during that period. Judge MacMillan, however, called for annual reports on the status of the case every year. Tenneco could also have asked for a partial lifting of the stay. But the company gave no indication that it wanted the stay temporarily lifted for the purpose of amendment, or that it would seek to amend once the stay was lifted permanently. Furthermore, Judge MacMillan did not stay the proceedings until November, 1977, two and a half years after Reeves asserted the infringement counterclaim. To say that the stay prevented amendment of the reply is a make-weight. It was a minimal hurdle at the most.

For these reasons, we hold that Judge Murray did not abuse his discretion and the order appealed from is affirmed.

AFFIRMED and REMANDED.

---

**4.** As Judge Rich said in his order denying Reeves' motion to dismiss this appeal, "While we recognize that the issues of infringement, interference, validity, and unenforceability are normally addressed together, they are distinct and separate issues." *Tenneco v. Reeves, supra,* at 1511. Thus, Tenneco had the duty to place this "distinct and separate" issue in its pleading if it wished the court to consider the matter. Given that the infringement and validity issues are "normally addressed together," Reeves (and the trial court) could reasonably have assumed that Tenneco's silence expressed its intention not to raise the validity issue.