**PANDROL USA, LP and Pandrol Limited, Plaintiffs–Appellees,**

v.

**AIRBOSS RAILWAY PRODUCTS, INC., Airboss of America Corp., Robert M. Magnuson, and Jose R. Mediavilla, Defendants–Appellants.**

Nos. 02–1067, 02–1355.

United States Court of Appeals, Federal Circuit.

Feb. 21, 2003.

Allen I. Rubenstein, Gottlieb, Rackman & Reisman, P.C., of New York, NY, argued for plaintiffs-appellees. With him on the brief was Raymond B. Churchill, Jr.

Richard R. Johnson, Shook, Hardy & Bacon, L.L.P., of Kansas City, MO, argued for defendants-appellants. Of counsel was Christopher P. Murphy, Shook, Hardy & Bacon, LLP, of Washington, DC.

Before CLEVENGER, Circuit Judge, PLAGER, Senior Circuit Judge, and DYK, Circuit Judge.

DYK, Circuit Judge.

Airboss Railway Products, Inc., Airboss of America Corp., Robert M. Magnuson, and Jose R. Mediavilla (collectively, "the defendants") appeal from the judgment of the United States District Court for the Western District of Missouri. *Pandrol USA, LP v. Airboss Ry. Prods.*, No. 99–0182 (W.D.Mo. Mar. 28, 2002).

The district court entered summary judgment of infringement of U.S. Patent No. 5,110,046 ("the '046 patent") and found that the defendants had waived their affirmative defenses and counterclaims by not raising them during briefing of cross-motions for summary judgment. We hold that the district court did not err in construing the claims; in granting summary judgment of patent infringement against all defendants; or in determining the amount of plaintiffs' lost profits. However, we also hold that the defendants did not waive their defense of patent invalidity; nor did they waive their invalidity counterclaim. We therefore vacate and remand for further proceedings.

## BACKGROUND

This is the second time this case has come before us. In the first appeal, we affirmed the district court's grant of summary judgment of noninfringement of U.S. Patent No. 4,463,898 ("the '898 patent"), but vacated the grant of summary judgment of noninfringement of the '046 patent

and remanded the case for further proceedings. *Pandrol USA, LP v. Airboss Ry. Prods., Inc.*, 10 Fed.Appx. 837, 841–42 (Fed.Cir.2001) ("*Pandrol I* "). On remand, Pandrol USA, LP and Pandrol Ltd. ("the plaintiffs") prevailed, securing a judgment awarding damages and an injunction based on a finding of infringement of claim 3 of the '046 patent. This time around, the parties' dispute solely concerns this judgment concerning the '046 patent. Accordingly, we limit our description of the background to that patent.

The '046 patent relates to a railroad track fastening system and is directed to a rail seat assembly designed to resist erosion of the concrete rail tie by interposing an abrasion-resistant plate and a layer of adhering material between the rail pad and the rail. Figure 1 from the patent specification is reproduced below:

FIGURE.1

The patent specification describes the preferred embodiment, in part, as follows:

> The improvement of this invention is to provide an abrasion plate 10 between the pad 4 and the tie 1. The plate 10 is smooth edged and incorporates recesses 11 to fit around the clamp supports or shoulder 5.
>
> The plate 10 may be bonded by layer 12 of adhesive (epoxy resin adhesives are preferred) to the tie 1 or an HDPE closed cell foam of 1.5 mm thickness of the same size and shape as plate 10 fitted between plate 10 and tie 1.

'046 patent, col. 2, ll. 33–41.

At issue on this appeal is the district court's interpretation of the term "adhering material" in claim 3 of the patent.

That term appears in claims 1 and 3. Claim 1 recites:

> An abrasion resistant rail seat for securing a rail to a concrete rail tie of the type in which the rail has a flange and is secured to a concrete rail tie by elastic rail clamps and an elastomeric rail pad insulates the rail from the rail tie, the improvement comprising interposing an abrasion resistant plate between said rail pad and said rail tie, said abrasion resistant plate forming a water tight seal with said rail tie, said abrasion resistant plate being wider than said rail and extending beyond the flange of said rail, and a layer of *adhering material* between said abrasion resistant rail plate and said rail tie for adhering said plate to said tie, said material being the sole *means for adhering* said plate to

said tie so that the replacement of said abrasion resistant rail plate is facilitated. *Id.* at col. 2, ll. 46–60 (emphases added).

Claim 2 recites: "A rail seat as claimed in claim 1, wherein the plate is of metal approximately one millimeter thick." *Id.* at col. 2, ll. 61–62.

Claim 3 recites: "A rail seat as claimed in claim 2, wherein said *adhering material* is a closed cell foam pad of one to two millimetres [sic] in thickness and of similar shape to said plate." *Id.* at col. 2, ll. 63–66 (emphasis added).

The plaintiffs filed their first amended complaint in this action on May 7, 1999, alleging that plaintiff Pandrol Ltd. was the owner of all right, title and interest in the '046 patent, and that plaintiff Pandrol USA, LP was the exclusive licensee under the patent. The plaintiffs alleged that defendant Airboss Railway Products, Inc. directly infringed the patent. The plaintiffs also alleged that defendants Airboss of America Corp. and Robert M. Magnuson ("Magnuson") and Jose R. Mediavilla ("Mediavilla") induced infringement. Airboss of America Corp. was the parent company of Airboss Railway Products, Inc. Magnuson was the President of Airboss Railway Products, Inc., and Mediavilla was the Vice President. The accused device was Airboss's three-piece railroad track fastening system.

On May 17, 1999, the defendants filed answers to the complaint. In addition to denying infringement and inducement of infringement, the defendants raised affirmative defenses, including patent invalidity. The defendants also filed counterclaims for a declaratory judgment that the '046 patent was invalid. In presenting their counterclaims, the defendants alleged:

Pandrol UK [Pandrol Ltd.] claims to be the owner of the '046 and '898 patents and, on information and belief, is in fact the owner thereof and/or has the right

to control enforcement of the '046 and '898 patents. . . . Pandrol U.S. is exclusively licensed or otherwise authorized by Pandrol UK under the '046 and '898 patents to make and sell products in the United States.

(Defs.' Answer & Countercls. at ¶¶ 66–67; Def. Airboss of Am. Corp.'s Answer & Countercls. at ¶¶ 66–67.) In the same answers, however, the defendants claimed that they were "without sufficient knowledge or information to form a belief as to the truth of the [plaintiffs'] averments [of patent ownership] and therefore deny them." (Defs.' Answer & Countercls at ¶¶ 14–15; Def. Airboss of Am. Corp.'s Answer & Countercls. at ¶¶ 14–15.)

On October 18, 1999, the district court issued an order construing the '046 patent. The court construed the recited "adhering material" in claims 1 and 3 of the patent to be "a layer of adhesive, such as a glue or epoxy, that bonds the plate to the tie." *Pandrol USA, LP v. Airboss Ry. Prods., Inc.*, No. 99–0182, slip op. at 5 (W.D.Mo. Oct. 18, 1999). On December 3, 1999, based on this claim construction, the district court granted the defendants' motion for summary judgment of noninfringement of the '046 patent.

On December 9, 1999, pursuant to a stipulation by both parties, the district court ordered "that the defendants' counterclaims are dismissed without prejudice and that defendants will be allowed to assert all said counterclaims in the event this matter is remanded for further consideration." *Pandrol USA, LP v. Airboss Ry. Prods., Inc.*, No. 99–0182, order of Dec. 9, 1999 (W.D.Mo. Dec. 9, 1999).

The plaintiffs appealed to this court. On March 21, 2001, we vacated the district court's determination of noninfringement of the '046 patent and remanded. *Pandrol I*, at 842–43.

We held that the district court had erroneously interpreted the "adhering material" recitation of claims 1 and 3 to require "a layer of adhesive, such as a glue or epoxy, which bonds the plate to the tie." *Id.* at 840. We reasoned that "the dictionary definition of 'adhere' indicates that bonding is not the only way to get two objects to 'adhere' to one another. For instance, magnets, solder, and Velcro strips can all be used to 'adhere' objects together. . . ." *Id.* at 840. We pointed out that the second preferred embodiment referred to "an HDPE closed cell foam," which does not adhere by bonding, and that "a construction that would cause a preferred embodiment to fall outside of the scope of the patent claims is strongly disfavored." *Id.* at 842. We also determined that the district court's narrow construction of "adhering material" was inconsistent with the language of claim 3, which indicated that a closed cell foam pad was an adhering material. We therefore vacated the district court's judgment of noninfringement of the '046 patent and remanded the case for further proceedings. *Id.* at 842.

On remand, on July 23, 2001, the individual and corporate defendants filed a motion for summary judgment of noninfringement. The defendants argued that the "adhering material" limitation required that the adhering material actually bind the rail plate to the rail tie. They urged that because "the Airboss product has nothing that acts to stick or hold the abrasion plate to the rail tie by suction, grasping or fusion or anything else, and there are no nails or spikes used," the accused product did not meet the "adhering material" limitation and the defendants were entitled to summary judgment of noninfringement as a matter of law. (Suggestions of Defs. In Support of Their Mot. for Summ. J. of July 23, 2001, at 4.) The defendants did not raise their affirmative defenses or counterclaims of invalidity in this motion. Nor did the defendants contest the plaintiffs' title to the patent. On July 31, 2001, defendants Magnuson and Mediavilla moved for summary judgment dismissing them as defendants, arguing that there was no proof that they knowingly induced infringement.

On August 31, 2001, the plaintiffs filed a cross-motion for summary judgment of infringement as to claim 3. The plaintiffs argued that this court's decision mandated that the "adhering material" limitation include a closed cell foam pad of the thickness recited in claim 3. Because there was no dispute but that the accused device included such a closed cell pad, the plaintiffs argued, they were entitled to a judgment of infringement as a matter of law as to claim 3. Alternatively, the plaintiffs argued that the foam pad in the accused product in fact did adhere to the plate and the tie as a result of the pressure on the tie resulting from heavy rail traffic. The plaintiffs did not request summary judgment of liability, nor did they seek summary judgment as to the affirmative defenses and counterclaims of invalidity asserted in the defendants' answers of May 17, 1999.

On September 13, 2001, the individual and corporate defendants answered the plaintiffs' cross-motion for summary judgment. In their opposition, the defendants disputed the plaintiffs' arguments regarding claim construction and infringement, but again did not raise their affirmative defenses or counterclaims of patent invalidity, nor did the defendants dispute the plaintiffs' title to the patent or argue that the individual defendants and Airboss of America Corp. were not responsible for inducing infringement.

On November 14, 2001, the district court granted the plaintiffs' motion for summary judgment of infringement as to claim 3 and denied the defendants' motions for sum-

mary judgment. *Pandrol USA, LP v. Airboss Ry. Prods., Inc.*, No. 99–0182, slip op. at 1 (W.D.Mo. Nov. 14, 2001) ("Opinion"). In construing the meaning of the recited "adhering material," the court found:

> As made clear in the Federal Circuit's decision, the term "adhering material" is not limited to bonding and must include a closed cell foam pad as well as the preferred polyethylene closed cell foam pad [disclosed in the preferred embodiment]. As a result, for purposes of claim 3 of the '046 patent, "adhering" must include at least the type of adherence that results from the combined use of a metal abrasion plate, polyethylene foam pad, and concrete tie under a railroad rail.

*Id.* at 4. The court found that "[i]t is undisputed that defendants' product utilizes a foam pad which is a polyethylene pad of one to two millimeters in thickness and of similar shape to the abrasion plate." *Id.* at 5. The court therefore concluded:

> [S]ince it is undisputed that defendants are using a polyethylene closed cell foam pad in their three-part assembly product, copying the disclosed embodiment in plaintiffs' '046 patent, the Court finds that plaintiffs are entitled to summary judgment as a matter of law on their claim that defendants have infringed the '046 patent.

*Id.* at 6.

In denying defendants Magnuson and Mediavilla's motion for summary judgment dismissing them as defendants, the court held that, based on the two defendants' personal participation in Airboss's alleged acts of infringement, they could be held personally liable "for participating in, inducing, and approving acts of patent infringement," and would not be dismissed from the case. *Id.* at 8.

During a November 15, 2001, telephone conference involving the parties and the district court, the defendants argued that they were entitled to try the issues of patent invalidity, ownership and "the liability of the individuals." Transcript of Tel. Conference of Nov. 15, 2001, at 7, ll. 14–15, *Pandrol*, No. 99–0182. The plaintiff argued that "damages is all that's left." *Id.* at 2, ll. 18–19. The district court asked the parties to submit briefs on the issue of whether the defendants had waived the right to contest patent validity or the other defenses by not raising them in response to the plaintiffs' motion for summary judgment. On November 19, 2001, both parties filed the requested briefs.

On November 21, 2001, the district court declined to schedule for trial the "affirmative defenses of (1) invalidity of the patent; (2) lack of responsibility of one or more of the defendants for the acts of infringement; and (3) lack of ownership by the plaintiffs." *Pandrol USA, LP v. Airboss Ry. Prods., Inc.*, No. 99–0182, order of Nov. 21, 2001 at 2 (W.D.Mo. Nov. 21, 2001) ("Order"). The district court found that the defendants had waived their defenses by failing to raise them in opposition to the plaintiffs' motion for summary judgment of infringement. The district court limited the trial to the issue of damages. While the court did not specifically address the defendants' counterclaims, it ordered that a trial would be held, "limited to the determination of plaintiff's damages." *Id.* at 5.

On November 27–28, 2001, a jury trial was held on the issue of damages. The jury awarded the plaintiffs $3,056,527.00 in lost profits damages, and the district court entered judgment against the defendants for this amount. On January 22, 2002, the court granted the plaintiffs' Motion to Alter or Amend the judgment, and awarded the plaintiffs an additional $123,161.60 in prejudgment interest. In addition to these monetary damages, the district court entered a final injunction against the defendants on November 19, 2001, "preventing defendants from manufacturing, market-

ing, selling, or shipping any of the defendants' three-part assembly devices which have been found to infringe plaintiffs' patent." *Pandrol USA, LP v. Airboss Ry. Prods., Inc.,* No. 99–0182, order of Nov. 19, 2001 at 1 (W.D.Mo. Nov. 19, 2001).

The defendants timely filed this appeal.

## DISCUSSION

I. Jurisdiction and Standard of Review.

 Even though the parties have raised no objection to our jurisdiction over this appeal, we are obligated to consider whether there is a final judgment of the district court. 28 U.S.C. § 1295(a)(1) (2000); *View Eng'g, Inc. v. Robotic Vision Sys., Inc.,* 115 F.3d 962, 963, 42 USPQ2d 1956, 1958 (Fed.Cir.1997). If a "case is not fully adjudicated as to all claims for all parties," there is no "final decision" and therefore no jurisdiction. *Syntex Pharm. Int'l, Ltd. v. K–Line Pharm., Ltd.,* 905 F.2d 1525, 1526, 15 USPQ2d 1239, 1240 (Fed.Cir.1990). A judgment that does not dispose of pending counterclaims is not a final judgment. *Id.* The issue here is whether the district court disposed of the defendants' counterclaims, thereby rendering an appealable final judgment.

After the district court's original grant of summary judgment in favor of the defendants, the defendants agreed to dismiss their counterclaims without prejudice, so that there would be an appealable final judgment. The parties stipulated "that the Defendants' Counterclaims be dismissed without prejudice to Defendants' right to assert all the defenses recited in its Answers and Counterclaims to Plaintiff's First Amended Complaint, including the defenses of patent invalidity, in the event of an appeal which results in a remand for trial." (Stipulation of Dec. 6, 1999). The district court then ordered "that the defendants' counterclaims are dismissed without prejudice and that defendants will be allowed to assert all said

counterclaims in the event this matter is remanded for further consideration." *Pandrol,* No. 99–0182, order of Dec. 9, 1999. Because the counterclaims had been dismissed, the first appeal to this court was from a final judgment. However, we were advised at oral argument in the present appeal that on remand from this court, no further action was taken to reinstate the counterclaims. Both parties agreed that none was required, and that the counterclaims were automatically reinstated, and were treated as reinstated by both the parties and the district court. Both parties urged as well that the district court disposed of the counterclaims. We agree.

After the district court granted summary judgment of infringement, the defendants urged that the issue of patent invalidity remained to be resolved. (Def.'s Br. Re. Fact Issues Remaining to be Tried Before a Jury at 1.) In ruling that the defendants had waived their defenses, the district court subsequently ordered "that the trial will be limited to the determination of plaintiffs' damages." Order at 4. In this ruling the district court effectively held that the counterclaims had been waived. After the jury returned a verdict on damages, the district court entered judgment against the defendants on November 28, 2001.

 "No form of words is necessary to evince the rendition of a judgment." *United States v. F. & M. Schaefer Brewing Co.,* 356 U.S. 227, 232, 78 S.Ct. 674, 2 L.Ed.2d 721 (1958) (citation omitted). Rather, whether an order constitutes a final judgment "depends upon whether the judge has or has not clearly declared his intention in this respect in his opinion." *Id.* In other words, as the Second Circuit has observed, "[f]inality is determined on the basis of pragmatic, not needlessly rigid *pro forma,* analysis. . . . What essentially is required is some clear and unequivocal manifestation by the trial court of its belief

that the decision made, so far as it is concerned, is the end of the case." *Fiataruolo v. United States*, 8 F.3d 930, 937 (2d Cir.1993). In this case, the district court's entry of judgment against the defendants for money damages and an injunction, after having held that the defendants had waived the issue of patent invalidity, evinced a clear intent to resolve or dispose of all claims and end the case. There is, therefore, a final judgment of the district court, and this court has jurisdiction over the appeal under 28 U.S.C. § 1295(a)(1).

We review the grant of summary judgment without deference. *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 988, 50 USPQ2d 1607, 1609 (Fed.Cir. 1999).

## II. Claim Construction.

■ The only issue the parties raise regarding claim construction concerns the "adhering material" limitation of claim 3. The defendants argue that the district court erroneously concluded that any closed cell foam pad is an "adhering material."

Our earlier decision in this case is dispositive of this issue. In *Pandrol I* we concluded that "[t]he clear language of claim 3 indicates that a closed cell foam pad is an 'adhering material,'" and that the district court's construction erroneously excluded from claim coverage the "HDPE closed cell foam" that was disclosed in the preferred embodiment. *Pandrol I* at 842.

■ The defendants essentially argue that our earlier claim construction was in-

correct. Even if that claim construction were not binding as the law of the case, it was clearly correct. Both the abstract and the preferred embodiment make clear that a gasket between the rail plate and the rail tie, in and of itself, constitutes an "adhering material" and need not satisfy a separate bonding requirement.[1] The abstract provides, "[t]he plate *may be* bonded to the rail tie *or a resilient gasket can be interposed* between the rail tie and the plate." Abstract of the '046 Patent (emphasis added). This makes clear that bonding is merely an alternative to the separate solution of merely *interposing* a gasket between the rail tie and the plate. The preferred embodiment similarly provides, "[t]he plate 10 *may be bonded* by layer 12 of adhesive (epoxy resin adhesives are preferred) to the tie *or an HDPE closed cell foam* of 1.5 mm thickness of the same size and shape as plate 10 *fitted* between plate 10 and tie 1." '046 Patent, col. 2, ll. 37–41 (emphases added). Once again, bonding is merely an alternative embodiment to inserting a closed cell foam, which is "fitted" between the plate and the tie. Hence, while the claims require an "adhering material" between the abrasion resistant plate and the rail tie, this requirement is satisfied by "interpos[ing]" or "fitt[ing]" the closed cell foam pad between the rail plate and the tie.

■ The defendants' argument that the patentee disclaimed such an interpretation during prosecution is without merit. During prosecution, the Patent Examiner initially objected to the drawings in the application under 37 C.F.R. § 1.83(a),[2] because

---

1. It is well-settled that "[c]laims must be read in view of the specification, of which they are a part." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979, 34 USPQ2d 1321, 1329 (Fed.Cir.1995) (*en banc*), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). This includes consulting the preferred embodiment, *see, e.g., Watts v. XL Sys., Inc.*, 232

F.3d 877, 883, 56 USPQ2d 1836, 1840 (Fed. Cir.2000), and the abstract. *See, e.g., SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1342, 58 USPQ2d 1059, 1064 (Fed.Cir.2001).

2. 37 C.F.R. § 1.83(a) requires that "[t]he drawing in a nonprovisional application must

the drawings in the application did not include an illustration of the "adhering material." Office Action of Mar. 7, 1990 in the 489,498 Application at 2. The patentee amended the application by including an illustration of the "adhering material" in the drawings and "correct[ing] the informalities noted by the Examiner" in the specification. Am. of Mar. 13, 1991 to Application No. 489,498 at 2. The specification originally contained the following language:

> The plate 10 may be bonded by adhesive (epoxy resin adhesives are preferred) to the tie 1 or an HDPE closed cell foam of 1.5 mm thickness of the same size and shape as plate 10 is fitted between plate 10 and tie 1.

See *id.* at 1. The patentee amended the specification to refer to the new drawings, by adding "layer 12 of" between "by" and "adhesives" and deleting the word "is" between "plate 10" and "fitted." Hence, the amended lines of the specification read:

> The plate 10 may be bonded by *layer 12 of* adhesive (epoxy resin adhesives are preferred) to the tie 1 or an HDPE closed cell foam of 1.5 mm thickness of the same size and shape as plate 10 fitted between plate 10 and tie 1.

'046 patent, col. 2, ll. 37–41 (added language emphasized; deletion indicated by strikethrough). The addition of the phrase "layer 12 of" and the deletion of the word "is" are without significance. The defendant retained the language indicating that a preferred embodiment would include "an HDPE closed cell foam of 1.5 mm thickness of the same size and shape as plate 10 *fitted* between plate 10 and tie 1." '046 patent, col. 2, ll. 38–41 (emphasis added).

The district court found, "[i]t is undisputed that defendants' product utilizes a foam pad which is a polyethylene pad of one to two millimeters in thickness and of similar shape to the abrasion plate." Opinion at 5. There is thus no dispute that under this construction of claim 3, the district court correctly determined that the claims cover the accused device, and that the plaintiffs were, therefore, entitled to summary judgment of infringement as a matter of law.

### III. Waiver of the Invalidity Defense and Counterclaim.

■ The defendants argue that they did not waive the right to a trial on the issue of invalidity by failing to raise it in opposition to the cross-motion for summary judgment as to the issue of infringement. We agree.

On remand of this case from our first decision, the plaintiffs filed a motion for summary judgment as to all defendants, asking that the district court "enter[ ] judgment of infringement against the Defendants and in favor of the Plaintiffs on claim 3 of the '046 patent." (Suggestions of Pls. In Support of Their Mot. for Summ. J. of Aug. 31, 2001, at 20). As noted above, the plaintiffs did not request summary judgment of liability, only infringement. Nor did the plaintiffs seek summary judgment with respect to the affirmative defense and counterclaim of invalidity asserted in the defendants' answers of May 17, 1999.

■ Supreme Court precedent and our cases make clear that patent infringement and patent validity are treated as separate issues. In *Cardinal Chemical Co. v. Morton International, Inc.,* 508 U.S. 83, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993), the Supreme Court held that a finding that a patent is not infringed does not render the counterclaim for patent invalidity moot. *Id.* at 102–03, 113 S.Ct. 1967. The Court determined that "[a] party seeking a de-

show every feature of the invention specified in the claims."

claratory judgment of invalidity presents a claim *independent of the patentee's charge of infringement.*" *Id.* at 96, 113 S.Ct. 1967 (emphasis added). The Court concluded that "of the two questions, validity has the greater public importance." *Id.* at 100, 113 S.Ct. 1967 (citation omitted); *see also Altvater v. Freeman,* 319 U.S. 359, 365–366, 63 S.Ct. 1115, 87 L.Ed. 1450 (1943) (holding that a finding of noninfringement does not render the distinct claim of patent invalidity moot).

Similarly, this court has long recognized that patent infringement and invalidity are separate and distinct issues. "Though an invalid claim cannot give rise to liability for infringement, whether it is infringed is an entirely separate question capable of determination without regard to its validity." *Medtronic, Inc. v. Cardiac Pacemakers, Inc.,* 721 F.2d 1563, 1583, 220 USPQ 97, 111 (Fed.Cir.1983) (noting that although the district court was correct in its determination that the patents in suit were invalid, the "better practice" would have been to resolve the issue of infringement as well); *see also Carman Indus., Inc. v. Wahl,* 724 F.2d 932, 936 n. 2, 220 USPQ 481, 484 n. 2 (Fed.Cir.1983) (the district court erroneously "combined the analysis of validity with that of infringement").

We have applied this rule in a variety of contexts. For example, in *Tenneco Resins, Inc. v. Reeves Bros., Inc.,* 752 F.2d 630, 224 USPQ 536 (Fed.Cir.1985), we held that the district court did not abuse its discretion in refusing a party's delayed motion to amend its pleadings to add a defense of invalidity:

> While we recognize that the issues of infringement, interference, validity, and unenforceability are normally addressed together, they are distinct and separate issues. Thus, Tenneco had the duty to place this distinct and separate issue in its pleading if it wished the court to consider the matter. Given that the in-

fringement and validity issues are normally addressed together, Reeves (and the trial court) could reasonably have assumed that Tenneco's silence [in its original pleading] expressed its intention not to raise the validity issue.

*Id.* at 635 n. 4, 752 F.2d 630, 224 USPQ at 539 n. 4 (citation and internal quotations omitted).

In *Fin Control Systems Pty, Ltd. v. OAM, Inc.,* 265 F.3d 1311, 1321, 60 USPQ2d 1203, 1207 (Fed.Cir.2001), we held that a district court could not *sua sponte* grant a party summary judgment of patent invalidity in response to a motion for summary judgment that was focused exclusively on the issue of noninfringement:

> [the] defenses of invalidity and unenforceability were not the subject of any motion before the district court, nor does the record indicate that these aspects of the case had been fully litigated at the time that the district court entered judgment. Therefore, the district court's *sua sponte* grant of summary judgment of invalidity and unenforceability was procedurally improper because it did not provide the parties with adequate notice or an opportunity for FCS to present evidence and argument in opposition to the motion.

*Id.* at 1321, 265 F.3d 1311, 60 USPQ2d at 1210.

■ Hence, the issue of invalidity is a separate issue from infringement, and an alleged infringer's failure to raise it in opposition to a motion for summary judgment of infringement is not a waiver. This conclusion is strongly supported by cases declining to find a waiver of invalidity defenses in other contexts. *See, e.g., Lear v. Adkins,* 395 U.S. 653, 670–71, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969) (accepting a license under a patent is not a waiver of the right to challenge the validity of that patent); *Ecolab, Inc. v. Paraclipse, Inc.,*

285 F.3d 1362, 1376, 62 USPQ2d 1349, 1358–59 (Fed.Cir.2002) (narrowly construing a consent decree provision admitting invalidity); *Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 481, 20 USPQ2d 1241, 1250 (Fed. Cir.1991) (same); *Scosche Indus. v. Visor Gear, Inc.*, 121 F.3d 675, 679, 43 USPQ2d 1659, 1662–63 (Fed.Cir.1997) (a party does not waive its right to assert invalidity as a defense by offering a judgment under Fed. R.Civ.P. 68 admitting infringement).

■ The district court therefore erred in limiting the trial to the determination of the plaintiffs' award of damages. The case must be remanded for the purpose of allowing the defendants to try their invalidity defense and counterclaim.[3]

### IV. Liability of the Secondary Defendants

■ We reach a different conclusion with respect to the issue of the alleged absence of liability of defendants Airboss of America Corp., Magnuson and Mediavilla. The district court ruled that the defendants were not entitled to a trial on the "lack of responsibility of one or more of the defendants for the acts of infringement," because this "affirmative defense[ ]" was not raised in opposition to the plaintiffs' motion for summary judgment. Order at 2–3. While the district court judge incorrectly classified the alleged non-liability of the secondary defendants as an affirmative defense, he was nonetheless correct that failure to raise the issue resulted in waiver.

■ The defendants argue that this issue was not presented by the plaintiffs'

motion for summary judgment, because it failed to separately discuss the infringement liability of defendants other than Airboss Railway Products, Inc. or offer specific evidence as to the liability of each defendant. We disagree. The plaintiffs' motion specifically sought a finding of infringement as to all defendants: "the Plaintiffs respectfully request that the Court ... enter[ ] judgment of infringement against the Defendants and in favor of the Plaintiffs on claim 3 of the '046 patent." (Suggestions of Pls. In Support of Their Mot. for Summ. J. of Aug. 31, 2001, at 20.) The individual defendants and Airboss of America Corp. were obligated to oppose this motion with their arguments as to the secondary defendants' non-liability for infringement. As the Eleventh Circuit has observed, there is no "onus on the district court to distill any possible argument which could be made based on the materials before the court. Presenting such arguments in opposition to a motion for summary judgment is the responsibility of the non-moving party, not the court." *Blue Cross & Blue Shield of Ala. v. Weitz*, 913 F.2d 1544, 1550 (11th Cir.1990) (holding that whether or not "change of circumstances" is viewed as an affirmative defense to an ERISA civil enforcement action, it must be raised by the non-movant in response to a motion for summary judgment, or it is waived). Just as "an affirmative defense must be raised in response to a summary judgment motion, or it is waived," *Diversey Lever, Inc. v. Ecolab, Inc.*, 191 F.3d 1350, 1353, 52 USPQ2d 1062, 1064 (Fed.Cir.1999), so also

---

**3.** In addition to invalidity, the appellants also asserted the affirmative defense and counterclaim of unenforceability by reason of inequitable conduct in their original answers to the complaint. We need not address the question of whether this issue was waived for failure to raise it in response to the appellees' motion for summary judgment, because the appellants have not argued on this appeal that their inequitable conduct defense and counterclaim were preserved. "[A]n issue not raised by an appellant in its opening brief ... is waived." *Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 800, 17 USPQ2d 1097, 1103 (Fed. Cir.1990). Thus, the inequitable conduct defense is not open on remand.

the defendants' arguments as to the non-liability of the secondary defendants was waived when it was not raised in response to the motion for summary judgment.[4]

### V. Patent Ownership

█ We also find that the defendants waived the right to contest the plaintiffs' title to the patent, insofar as lack of ownership is viewed as a defense to the claim of infringement.

Under the Patent Act, only a "patentee shall have a remedy by civil action for infringement of his patent." 35 U.S.C. § 281 (2000). The word "patentee" includes "successors in title to the patentee," 35 U.S.C. § 100(d), and exclusive licensees holding all substantial rights to the patent. *Prima Tek II, L.L.C. v. A–Roo Co.*, 222 F.3d 1372, 1377, 55 USPQ2d 1742, 1745 (Fed.Cir.2000). Accordingly, when the plaintiffs moved for summary judgment of infringement on August 31, 2001, they implicitly asserted ownership of the patent, which is a necessary prerequisite to winning a judgment of infringement. In opposing this motion, it was incumbent upon the defendants to raise the issue of lack of patent ownership. For the same reasons that we here hold that the individual liability of secondary defendants issue was waived, the district court was correct that the failure to raise the ownership issue in opposing summary judgment of infringement constituted a waiver of that issue as a defense to the plaintiffs' claim of infringement.

### VI. Standing

█ However, the defendants' waiver of the defense of lack of patent ownership did not waive the defendants'

ability to challenge the plaintiffs' standing to sue under Article III of the Constitution. Under Article III, "standing . . . is jurisdictional and not subject to waiver." *Lewis v. Casey*, 518 U.S. 343, 349 n. 1, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). We find that the plaintiffs have sufficiently established standing under Article III.

█ It is well-established that any party, and even the court *sua sponte*, can raise the issue of standing for the first time at any stage of the litigation, including on appeal. *Nat'l Org. of Women, Inc. v. Scheidler*, 510 U.S. 249, 255, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994) (issue of standing raised by defendant for the first time on appeal); *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 230, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (issue of standing raised *sua sponte* on appeal to the Supreme Court). When standing is challenged on appeal after a final judgment on the merits, the appellate court determines standing based on an examination of the whole record. As the Fifth Circuit has framed the analysis:

> If this were an appeal from a judgment granting the defendants' motion to dismiss for lack of standing, we would be required to accept as true all of the material allegations of the complaint. . . . However, because we are reviewing a final judgment based upon a fully developed record, we must evaluate standing from all materials of record.

*Pollard v. Cockrell*, 578 F.2d 1002, 1006 (5th Cir.1978) (citations omitted); *see also City of Hartford v. Towns of Glastonbury*, 561 F.2d 1032, 1051 (2d Cir.1976) (*en banc*). We therefore examine the record to determine if it supports the plaintiffs' Article III standing.

---

4. In any event, the individual defendants were heard on this issue in connection with a motion for summary judgment they filed asking that they be dismissed from the suit. The district court denied the motion, finding that the undisputed facts "demonstrate that Mediavilla and Magnuson are personally involved in the activities of [Airboss]." Opinion at 7.

■ Based on the record on appeal, there is sufficient evidence to support standing. Establishing ownership of a patent that has been infringed satisfies the requirements of Article III standing. *Paradise Creations, Inc. v. U V Sales, Inc.,* 315 F.3d 1304, 1308, 65 USPQ2d 1293, 1295 (Fed.Cir. Jan.3, 2003); *Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.,* 248 F.3d 1333, 1346–47, 58 USPQ2d 1681, 1690 (Fed.Cir.2001). The record contains a signed and witnessed confirmation of assignment, indicating that plaintiff Pandrol, Ltd. was assigned the patent in suit on September 14, 1991, well before the filing of the complaint in this suit, and that this assignment was recorded in the U.S. Patent and Trademark Office on August 24, 1992. The defendants have offered no evidence or argument to rebut this evidence of patent ownership. Indeed, in their counterclaims of May 17, 1999, the defendants actually alleged that Pandrol Ltd. owned the patents in suit and that Pandrol USA was the exclusive licensee under the patents, even though in their accompanying answers to the complaint, the defendants denied patent ownership for want of information:

> Pandrol UK [Pandrol Ltd.] claims to be the owner of the '046 and '898 patents and, on information and belief, is in fact the owner thereof and/or has the right to control enforcement of the '046 and '898 patents. . . . Pandrol U.S. is exclusively licensed or otherwise authorized by Pandrol UK under the '046 and '898 patents to make and sell products in the United States.

(Defs.' Answer & Countercls. at ¶¶ 66–67; Def. Airboss of Am. Corp.'s Answer & Countercls. at ¶¶ 66–67.) Under these circumstances, there is no basis for questioning the plaintiffs' standing.

### VII. Damages

■ Even though we must remand for a determination of the issue of patent claim validity, in the interest of efficiency we address the issue of damages. The defendants first complain that the jury was not properly instructed on the damages issue. The defendants contend that the district court did not include the instruction that the "existence of an acceptable non-infringing substitute can limit or defeat a claim for lost profits." Appellants' Brief at 52. The defendant is referring to one of the factors for determining whether lost profits were caused by infringement listed in *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.,* 575 F.2d 1152, 197 USPQ 726 (6th Cir.1978). However, the district court did inform the jury that they could consider whether the plaintiffs established "the absence of non-infringing substitutes." Jury Instruction No. 6, given Nov. 28, 2001, *Pandrol,* No. 99–0182. This instruction was sufficient. The defendants also argue that the district court should have included the instruction that if the jury makes the finding "that Pandrol would not have made the sales that Air-Boss in fact made, you may not award profits." Appellants' Brief at 52–53. However, the district court did instruct the jury that "Pandrol must show that if Airboss had not infringed, Pandrol would have made those sales or a portion of them that Airboss made with the infringing product." Jury Instruction No. 6, given Nov. 28, 2001, *Pandrol,* No. 99–0182. We see no meaningful distinction between this jury instruction and the defendants' proffered jury instruction.

The defendants also argue that the plaintiffs did not submit sufficient evidence to support the jury award of lost profits. We conclude that the jury's award of damages for patent infringement was based on substantial evidence. *See Riles v. Shell Exploration & Prod. Co.,* 298 F.3d 1302, 1308, 63 USPQ2d 1819, 1823 (Fed.Cir. 2002).

The defendants finally contend that the plaintiffs failed to respond sufficiently to their discovery requests regarding lost profits, and that the trial was, therefore, "fundamentally unfair." Appellants' Brief at 47. However, the defendants have not demonstrated, and the record does not indicate, that they filed a motion to compel discovery under Federal Rule of Civil Procedure 37. Absent such a showing, the defendants cannot complain of alleged discovery violations. *Genentech, Inc. v. United States Int'l Trade Comm'n,* 122 F.3d 1409, 1422–23, 43 USPQ2d 1722, 1733–34 (Fed.Cir.1997).

Accordingly, the determination of lost profits was not erroneous.

## CONCLUSION

For the foregoing reasons, we affirm the determination of infringement, but vacate the district court's ultimate judgment awarding damages and an injunction pending resolution of the issue of invalidity. However, that judgment may be reinstated if the issue of patent validity is resolved in plaintiffs' favor by the district court. We reverse the dismissal of the defendants' counterclaims of patent invalidity. The case is remanded for further proceedings consistent with this opinion.[5]

*AFFIRMED–IN–PART, REVERSED–IN–PART, VACATED–IN–PART AND REMANDED.*

## COSTS

No costs.

---

**5.** The district court may, of course, issue a preliminary injunction pending resolution of the issue of invalidity if it concludes that the defendants have failed to raise a substantial claim of invalidity. *See Amazon.com, Inc. v. Barnesandnoble.com, Inc.,* 239 F.3d 1343, 1358–59, 57 USPQ2d 1747, 1757 (Fed.Cir. 2001).