**FIN CONTROL SYSTEMS PTY, LTD., Plaintiff–Appellant,**

v.

**OAM, INC., Defendant–Appellee.**

No. 00–1516.

United States Court of Appeals, Federal Circuit.

Sept. 12, 2001.

Martin J. Trupiano, Squire, Sanders & Dempsey L.L.P., of Los Angeles, CA, argued for plaintiff-appellant.

Robert A. Vanderhye, Nixon & Vanderhye P.C., of Arlington, VA, argued for defendant-appellee.

Before NEWMAN, CLEVENGER, and DYK, Circuit Judges.

CLEVENGER, Circuit Judge.

This is a patent infringement case in which Fin Control Systems Pty, Ltd. ("FCS") appeals from a decision of the United States District Court for the Central District of California. *Fin Control Sys. Pty, Ltd. v. OAM, Inc.*, No. CV-99-7037 (C.D.Cal. July 10, 2000). The district court ruled on summary judgment that OAM, Inc. does not infringe United States Patent No. 5,464,359 ("the '359 patent"), either literally or under the doctrine of equivalents, by its sale of certain removable surfboard fin systems. We affirm-in-part, vacate-in-part, and remand for further proceedings consistent with this opinion.

I

Background

The '359 patent, assigned to FCS, issued on November 7, 1995, and claims priority from an application first filed in Australia on March 9, 1992. In general terms, the '359 patent relates to a system for providing detachable fins to the bottom of a surfboard. Fins allow a surfer to control the direction and movement of his or her surfboard through the water. Detachable fins are desirable because they minimize the potential for damage to the surfboard or to the fins during transport and storage, and because they allow surfers to change the hydrodynamic characteristics of a surfboard by installing different sets of fins.

In the written description of the '359 patent, before specific embodiments are described in more detail, the claimed invention is first described in general terms:

In the practice of the present invention, fins are fitted by fixing in the board a number of plugs each of which is recessed to receive a mating tab or fixing member extending from the base of the fin. Preferably the plugs are cylindrical, so they can [be] fixed within drilled recesses of the board. The tabs may be fixed within the plug recesses by means which laterally engage the tabs, such as one or more screws, by friction, or by other means such [as] snap fitting formations.

In the preferred form of the invention, two plugs are provided per fin, and each fin is provided with a pair of tabs of rectangular cross-section dimensioned to fit neatly within rectangular recesses in the respective plugs, but of course other configurations may be used.

'359 patent, col. 1, l. 60—col. 2, l. 5.

As illustrated in the following figures, the specification of the '359 patent goes on to describe and illustrate "a preferably contemplated embodiment" in which two circular plugs 12 per fin 11 are mounted in spaced holes 17 within the body of a surfboard 10. In the context of the '359 patent, these plugs are called "fixing elements," and they are dimensioned to receive a pair of rectangular tabs 18 extending from the "end surface" (*i.e.*, bottom) of a fin 11. Specifically, each plug 12 includes a rectangular slot 13 dimensioned to receive one of the rectangular tabs 18. Grub screws 16 extend through the plugs 12 via diagonal threaded holes 15 to en-

gage with a side surface of each tab 18 extending from the bottom of the fin. '359 patent, col. 2, ll. 19–52.

FIG. 1

FIG. 3

FIG. 4

FIG. 5

FCS alleges that OAM infringes the '359 patent by marketing a removable fin attachment system known as the Fin Tech System. There is no dispute in this case concerning the construction and operation of OAM's accused Fin Tech System. Relevant aspects of OAM's system are illustrated in the following figures, which are taken from OAM's International Patent Application, Patent Cooperation Treaty, No. WO 99/21755. OAM admits that these figures accurately represent the Fin Tech System for purposes of this litigation.

The accused OAM Fin Tech System differs from the embodiments described in the '359 patent in a few respects. First, there is a single "dog-bone shaped" fixing element per fin (instead of two circular plugs per fin in the embodiments disclosed in the '359 patent). Second, instead of the rectangular tabs engaged by a grub screw at either the left or right side of the tabs in the embodiments described in the '359 patent, the accused OAM system includes two cross-shaped tabs at the bottom of each fin, engaged by a grub screw at the front surface of one of the front transverse tabs.

FIG.1.

As shown in the above figures, in the accused OAM Fin Tech System, a single "dog-bone shaped" polycarbonate socket 14 is provided per fin 12. Socket 14 is embedded within a surfboard body 13 and engaged by both the foam core and fiberglass skin of the surfboard body. The two cross-shaped tabs at the bottom of fin 12 comprise two longitudinal projections 22, 23 and two transverse projections (43–44 [1] and 45–46), dimensioned and constructed to fit into the cruciform sockets 15 and 16 of the dog-bone shaped socket housing 14. When the fin is installed on the surfboard, the longitudinal projections 22 and 23 of the fin fit into the longitudinal grooves of cruciform sockets 15 and 16, while the transverse projections 43–44 and 45–46 of the fin fit into the transverse grooves 17, 18, 19, and 20 of cruciform sockets 15 and 16.

In front of transverse groove 19 of front cruciform socket 15, there is a threaded passageway 36 inclined back toward the transverse groove 19 which receives a single grub screw 32. Grub screw 32 passes through passageway 36 and engages the front surface of the transverse projection 45 of the fin 12. Alternatively, behind transverse groove 18 of rear cruciform socket 16, there is another threaded passageway 36 inclined forward toward the transverse groove 18 which can receive another grub screw 32. This grub screw 32 passes through the rear passageway 36 and engages the rear surface of the transverse cross projection 44 of the fin 12. There is no dispute that commercial embodiments of the OAM Fin Tech System differ slightly from the above figures in that they use only a single grub screw 32 that engages the front surface of either transverse projection 45 or transverse projection 46 of the fin 12.

FCS filed its complaint against OAM on July 8, 1999, alleging contributory infringement pursuant to 35 U.S.C. § 271(c) and inducement of infringement pursuant to 35 U.S.C. § 271(b) as to claims 1–10 and 13–14 of the '359 patent. OAM filed an answer and counterclaim on September 2, 1999, seeking a declaration of noninfringement as to "the '359 patent," along with a

1. Transverse arm projection 44 is not shown in "FIG. 1," but is assumed to be hidden in the figure, behind fin 12 as a continuation of transverse arm projection 43.

declaration of invalidity and unenforceability of "the '359 patent."

On appeal, due to concessions made by FCS at oral argument before this court, only claim 13 of the '359 patent is currently at issue. This claim states as follows in its entirety, with emphases added to highlight the disputed terms necessary to resolve the present appeal:

13. A surf craft including a body with a fixing element embedded therein, said fixing element being of material of greater strength than that of the surf craft body and having a fixing cavity therein, a fin attached to the surf craft, said fin having a pair of lateral surfaces and an end surface, the end surface of the fin abutting against the lower surface of the body in the region of said fixing element, the fin having a fixing formation extending from its end surface, *said formation being engaged within the cavity of said fixing element by releasable means laterally engaging said formation, said releasable means applying lateral force to said formation,* said fixing element having an outer end adjacent said lower surface of said body, said force being generated by means of a member inserted into said fixing element from said outer end, said member being *a screw located in a passage extending from the outer surface of said fixing element to a side wall of said cavity.*

In due course, the parties filed cross-motions for summary judgment regarding infringement. After a claim construction hearing on May 5, 2000, the district court issued an order construing the asserted claims and granting summary judgment of noninfringement in favor of OAM. Relevant portions of the district court's claim interpretation are reproduced below:

"Releasable means laterally engaging said formation" as recited in each of the [asserted] claims, which is means plus function language, means engaging the lateral surfaces of the fin's tabs, as illustrated in Figure 6 of the '359 patent. The lateral surfaces are those on the side of the median vertical plane, passing through the longitudinal axis of the surfboard between the front and rear. Webster's dictionary defines "lateral" as "of or relating to the side; situated on, directed toward, or coming from the side...." *See also American Permahedge, Inc. v. Barcana, Inc.,* 105 F.3d 1441, 1444 (Fed.Cir.1997) ("the term 'lateral' in its usual dictionary usage means 'coming from the side'"). The Court declines to adopt plaintiff's proposed interpretation of "lateral" to mean "any surface which is not a top or bottom surface." In connection with a surfboard, which has a directional component, "lateral" cannot reasonably include the front and rear of the surfboard. This conclusion is supported by the language from the patent which provides, in the context of fin boxes previously patented, that "the rear of the fin is fixed by means of a vertical screw through a *rearwardly* extending portion of the base of the fin ..." '359 patent at Col. 1, lines 40–45 (emphasis added).

"Applying lateral force" as recited in claim 13 means a force that is transverse to the longitudinal axis of the surfboard between the front and the rear, as shown in Figure 5 of the '359 patent. *Id.* "To a side wall of said cavity" as recited in claim 13 means the surfaces congruent with the lateral surfaces of the fin.

*Fin Control Sys. Pty, Ltd. v. OAM, Inc.,* No. CV–99–7037, slip op. at 9–10 (C.D.Cal. July 10, 2000) (footnotes omitted). Given the district court's determinations that "laterally" means "from the side," (as opposed to "from the front" or "from the rear"), and that "lateral force" excludes "front force" or "rear force," the court

concluded that OAM did not literally infringe claim 13 because the grub screw on the accused OAM Fin Tech System undeniably engaged the fixing formation from the front.

Finally, citing our decision in *Sage Products, Inc. v. Devon Industries, Inc.,* 126 F.3d 1420, 1424–26, 44 USPQ2d 1103, 1107–08 (Fed.Cir.1997), the district court ruled that there could be no infringement under the doctrine of equivalents because permitting FCS to recover for infringement under the doctrine of equivalents would read the "laterally engaging," "applying lateral force," and "to a side wall of said cavity" limitations out of the claim. The district court thus concluded that "defendant shall have judgment against plaintiff with respect to plaintiff's complaint and with respect to defendant's counterclaim." A timely appeal by FCS followed, vesting us with jurisdiction pursuant to 28 U.S.C. § 1295(a)(1) (1994).

On appeal, FCS argues, *inter alia,* that the district court misinterpreted the terms "releasable means laterally engaging said formation," "applying lateral force," and "to a side wall of said cavity" by ruling that these terms exclude "frontal" or "rearward" engagements, forces, and walls. FCS also argues that the district court's allegedly erroneous rulings on claim interpretation led to an equally erroneous conclusion of noninfringement, both literally and under the doctrine of equivalents. Finally, FCS argues that the district court denied FCS its procedural rights by erroneously granting judgment to OAM on its defenses of invalidity and unenforceability despite the fact that OAM's motion for summary judgment did not address these defenses and was focused exclusively on the issue of noninfringement.

## II

### A

#### Standards Of Review

The district court's claim construction rulings underlying its grant of OAM's motion for summary judgment of noninfringement involve matters of law that are reviewed *de novo. Cybor Corp. v. FAS Tech., Inc.,* 138 F.3d 1448, 1456, 46 USPQ2d 1169, 1174 (Fed.Cir.1998) (en banc). The ultimate grant of summary judgment of noninfringement similarly involves a matter of law, and is therefore reviewed *de novo* as well. *Conroy v. Reebok Int'l, Ltd.,* 14 F.3d 1570, 1575, 29 USPQ2d 1373, 1377 (Fed.Cir.1994). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, summary judgment should be granted only when no "reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. 2505. In determining whether there is a genuine issue of material fact in dispute, the evidence must be viewed in the light most favorable to the nonmoving party, *Transmatic, Inc. v. Gulton Industries, Inc.,* 53 F.3d 1270, 1274, 35 USPQ2d 1035, 1038 (Fed.Cir.1995), and all reasonable inferences must also be drawn in favor of the nonmovant, *Marquip, Inc. v. Fosber America, Inc.,* 198 F.3d 1363, 1366, 53 USPQ2d 1015, 1018 (Fed.Cir.1999).

### B

#### Claim Interpretation

The central and dispositive issue in this case concerns the proper meaning of "lateral" and "side" in the context of the "fixing formation" and the corresponding "fixing cavity" recited in claim 13 of the '359

patent. In essence, the district court rejected FCS's proposed broad interpretation of "lateral" to mean "any surface which is not a top or bottom surface." Instead, the district court ruled that "lateral" and "side" in the context of claim 13 refer more narrowly to angles that are "transverse to the longitudinal axis of the surfboard between the front and the rear."

The district court justified its interpretation by properly consulting the undisputed ordinary definition of "lateral" in the dictionary:

[o]f or relating to the side; situated on, directed toward or coming from the side.

Webster's Third New International Dictionary of the English Language (unabridged) at 1275. FCS concedes that this definition of "lateral" makes sense in the context of a surfboard *fin*, because a fin is simply a "foil" having only two sides forming a continuous edge around its perimeter. However, FCS argues that the shape of the fixing formation is not limited to the preferred rectangular shape described in the '359 patent, and thus that it does not necessarily follow that the undisputed meaning of "lateral" as it applies to the fin also applies to the *fixing formations* extending from the bottom of the fin:

As applied to the surfboard fin which is described in the claims as having "lateral" sides, [the district court's construction of "lateral"] makes sense because the fin is a foil, and has only has [sic] two sides that form a continuous edge around its perimeter. Thus, its sides can be described as "lateral" sides because there are no other sides to be described. However, when the term "lateral" is understood in the context of the fixing formation or tab, there is a significant difference in [the] meaning of the term "lateral." The fixing formation or tab, as described in the written description, may be in any shape from a rod to a star. In order for the term

"laterally" to [have] a sufficiently broad scope to encompass the wide variety of possible shapes of the fixing formation, and consistent with the dictionary definition of "lateral" which includes "directed toward the side," the "lateral" surface of the fixing formation refers to *any* of the side surfaces of the fixing formation. FCS Opening Brief at 20 (citations omitted). Thus, FCS attacks the district court's claim interpretation by alleging that the court confused the term "lateral" as it relates to fins with "lateral" as it relates to the fixing formations. FCS also relies on the testimony of its expert on claim construction and infringement, Mr. Michael Neft, who testified at the claim construction hearing that with respect to the claimed "fixing formation," the word "lateral" refers to "any side of a shape except for the top and bottom."

Although we agree with FCS that the terms "lateral" and "side" may not necessarily have the same meaning in the context of a fixing formation that they indisputably have in the context of a surfboard fin, our review of the intrinsic record in this case leads us to the conclusion that FCS's argument ultimately fails.

 First, we begin with the presumption that the same terms appearing in different portions of the claims should be given the same meaning unless it is clear from the specification and prosecution history that the terms have different meanings at different portions of the claims. *See Phonometrics, Inc. v. N. Telecom, Inc.,* 133 F.3d 1459, 1465, 45 USPQ2d 1421, 1426 (Fed.Cir.1998). In this case, the use of the term "lateral" in the claims when referring to the surfboard fins is entirely consistent with the district court's interpretation of "lateral" in the context of the fixing formations. The claim recites a "fin having a pair of lateral surfaces and an end surface," '359 patent, col. 4, ll. 44–

45, and there can be no question that the "lateral surfaces" of the fin are those "on the side of the median vertical plane, passing through the longitudinal axis of the surfboard between the front and the rear," in perfect harmony with the district court's interpretation.

The district court's interpretation is also consistent with the usage of the terms "laterally engaging" and "lateral forces" in the prosecution history of the '359 patent and in the prior art of record during prosecution. Specifically, in an Office Action dated November 28, 1994, the Examiner rejected some of the originally-filed claims as obvious under 35 U.S.C. § 103 in view of U.S. Patent No. 4,493,665 ("Liddle") partly on the basis that Liddle taught "a releasable means 20 laterally engaging the fixing formation within the cavity." Our review of the record reveals that the "releasable means 20" in Liddle engages Liddle's "fixing formation" from the side, in a manner perfectly consistent with the district court's interpretation.

Finally, U.S. Patent No. 4,379,703 ("Mizell"), a prior art reference cited during the prosecution of the parent patent to the '359 patent-in-suit, confirms that the meaning of "lateral forces" to people of ordinary skill in the art of surfboard manufacturing is consistent with the district court's interpretation:

> It will be understood that the flange 28, which in the embodiment illustrated in the accompanying figures completely surrounds the entrance to slot 30, provides added resistance to the *lateral forces normally applied to the fins during surfing and transmitted to the fin boxes into which the fins are inserted.*

Mizell '703 patent, col. 3, ll. 9–14 (emphasis added). This passage is consistent with the district court's interpretation, and it actually confirms the notion that the term "lateral forces" has the same meaning in the context of "fixing formations" and "fin boxes" that it has in the context of "fins." The relevant figures from Mizell are reproduced below:

There can be no doubt that the "lateral forces" discussed in Mizell refer to forces coming from the *side* of the surfboard, consistent with the district court's interpretation of "lateral."

In response to the foregoing, FCS argues that the plain language of the claim conclusively establishes that "lateral" refers to any side of a fixing formation except for the top or bottom. This argument proceeds from the undisputed fact that the term "lateral" is also used in the claim to refer to sides of surfboard fins, which allegedly have no front or rear surfaces. According to FCS, it makes sense to construe "lateral" narrowly to refer to the left and right sides of a surfboard fin because there are no other sides to be described. In contrast, according to FCS, "lateral" should be construed more broadly when the shape being described has sides other than simply a left side and a right side (*e.g.*, when the shape is a star or a cross). Thus, according to FCS's logic, assuming *arguendo* that surfboard fins *had* front surfaces and rear surfaces, those surfaces would have also been referred to as "lateral surfaces." This argument is undercut by the written description of the '359 patent, which specifically addresses the "front" and "rear" directional components of the surfboard *fins* without any mention of the words "lateral" or "side." For example, at column 1, lines 36–44 of the '359 patent, a prior art fin is described as having a "front" (line 41) and a "rear" (line 42), and a prior art fin box mounting structure is also described as having a "rear" end (line 44).

For the above reasons, we discern no error with the district court's interpretation of the terms "releasable means laterally engaging said formation," "applying lateral force," and "to a side wall of said cavity" in claim 13 of the '359 patent.

## C

### Infringement

■ Our affirmance of the district court's interpretation of the disputed terms discussed in section II.B, *supra,* necessarily leads to an affirmance of the district court's finding that there was no literal infringement. The correct interpretation excludes "frontal" or "rearward" engagements, forces, and walls, and there is no dispute that the screw on the accused OAM device engages the *front* of the tab, or "fixing formation," on the surfboard fin. Therefore, we agree with the district court that the accused OAM systems do not meet the "lateral" or "side" limitations required by claim 13 of the '359 patent.

Because we find that the accused OAM systems fail to meet the "lateral" and "side" limitations of claim 13, we need not consider additional noninfringement arguments made by OAM. *See Tex. Instruments, Inc. v. United States Int'l Trade Comm'n,* 805 F.2d 1558, 1562, 231 USPQ 833, 834 (Fed.Cir.1986) (holding that to infringe a claim, the accused device must embody every element of the claim as properly interpreted).

■ We also affirm the district court's conclusion that there can be no infringement under the doctrine of equivalents because applying the doctrine to find infringement in this case would improperly read the "lateral" and "side" limitations out of claim 13. *See Sage Prods.,* 126 F.3d at 1424–26, 44 USPQ2d at 1107–08 (reading limitations out of the claims, including by interpreting limitations in such a way that they do not have their normal meaning, is inappropriate in an analysis pursuant to the doctrine of equivalents). Here the patentee limited claim 13 to lateral engagement, and, as correctly interpreted, lateral engagement must necessarily exclude engagement from the front or the

rear with respect to the surfboard orientation. *See id.* at 1425, 126 F.3d 1420, 44 USPQ2d at 1107 ("A skilled patent drafter would foresee the limiting potential of the ['lateral'] limitation.").

### D

### Other Matters

FCS argues on appeal that the judgment entered by the district court on July 12, 2000, was improper and "improvident" insofar as it granted summary judgment on OAM's counterclaim, which had asserted invalidity and unenforceability of the '359 patent. On its face, the judgment of the district court states that "defendant shall have judgment against plaintiff with respect to plaintiff's complaint and with respect to defendant's counterclaim." There is no dispute that OAM's answer and counterclaim in this case, filed on September 2, 1999, sought a declaration of noninfringement as to the '359 patent, along with a declaration of invalidity and unenforceability of the '359 patent. Thus, FCS is correct in asserting that the district court granted summary judgment on OAM's counterclaim *both* as to OAM's claim for a declaration of noninfringement and as to its defenses of invalidity and unenforceability of the '359 patent. Indeed, because OAM had raised the alleged invalidity and unenforceability of the '359 patent in its counterclaim, the court was obligated to rule on these matters as a prerequisite to entering judgment in the case. *Cardinal Chem. Co. v. Morton Int'l, Inc.,* 508 U.S. 83, 93–94, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993) (a finding of noninfringement does not moot invalidity or unenforceability defenses when they are raised in a counterclaim); *Gen. Elec. Co. v. Nintendo Co.,* 179 F.3d 1350, 1356, 50 USPQ2d 1910, 1914–15 (Fed.Cir.1999) (same).

For the reasons stated above, we affirm that portion of the judgment of the district court granting summary judgment on OAM's counterclaim as to OAM's claim for a declaration of noninfringement. However, OAM's defenses of invalidity and unenforceability were not the subject of any motion before the district court, nor does the record indicate that these aspects of the case had been fully litigated at the time that the district court entered judgment. Therefore, the district court's *sua sponte* grant of summary judgment of invalidity and unenforceability was procedurally improper because it did not provide the parties with adequate notice or an opportunity for FCS to present evidence and argument in opposition to the motion. Fed.R.Civ.P. 56. For these reasons, we vacate the district court's entry of judgment on the defenses of invalidity and unenforceability and remand for further proceedings to adjudicate the validity issues remaining in the case.

Finally, we note that at oral argument before this court, at the end of FCS's rebuttal period, a lengthy interchange took place between Mr. Trupiano, counsel for FCS, Mr. Vanderhye, counsel for OAM, and the court. During this interchange, Mr. Trupiano repeatedly represented that Mr. Barry Jolly (OAM's expert on claim construction and noninfringement) had admitted in his live testimony before the district court that "lateral" could refer to any side of the fixing formation, in a manner consistent with FCS's interpretation of the term. The significance of Mr. Trupiano's representation that the testimony came from Mr. Jolly, if true, would be that Mr. Jolly's statements would constitute a fatal admission against interest made by OAM.

We were somewhat puzzled by FCS's waiting until the last moment at oral argument to make what appeared to be the winning point. To better comprehend FCS's statements at oral argument, we

ordered the complete record in this case. Upon review of the record, however, we learned that, contrary to the assertion made by counsel for FCS, the cited testimony was that of Mr. Neft, FCS's expert, and *not* that of Mr. Jolly.

We do not attribute a malicious intent to counsel for FCS in misstating the source of the testimony. However, these misstatements created unnecessary confusion and placed an undue burden on this court to ascertain the true source of the testimony. We also note that neither party sought to clarify the record in this regard after oral argument in this case.

### III

### Conclusion

For the reasons stated above, we conclude that the district court's claim interpretation and resulting grant of summary judgment of noninfringement were not erroneous. We therefore affirm the judgment insofar as it relates to noninfringement. However, we vacate the district court's judgment of invalidity and unenforceability on OAM's counterclaim, and remand for consideration of these issues. While we are obligated to remand the case to the district court, in light of our holding of noninfringement, the parties in fact may elect not to further pursue the validity issues on the remand.

*AFFIRMED–IN–PART, VACATED–IN–PART, AND REMANDED*