**Harold SCHOENHAUS and Richard M. Jay, Plaintiffs,**

v.

**GENESCO, INC. and Johnston & Murphy, Inc., Defendants.**

No. CIV.A. 03–0372.

United States District Court, E.D. Pennsylvania.

Jan. 10, 2005.

Rome LLP, Philadelphia, PA, for Plaintiffs.

Kristin D. Mallatt, Mitchell G. Stockwell, Kilpatrick Stockton LLP, Atlanta, GA, Thomas B. Kenworthy, Morgan Lewis And Bockius L.L.P., Philadelphia, PA, for Defendants.

## OPINION

POLLAK, District Judge.

Plaintiffs Harold Schoenhaus and Richard M. Jay have filed suit against Genesco and Johnston & Murphy (collectively referred to as "Genesco").[1] Count I claims infringement of plaintiffs' patent for an orthotic device designed to prevent hyperpronation of the foot; Count II alleges misappropriation of trade secrets; Count III alleges conversion; and Count IV alleges unjust enrichment. Taken collectively, Counts II, III, and IV charge misappropriation, and impermissible exploitation, of the trade secrets allegedly embodied in plaintiffs' patent.

Currently before the court is defendants' motion for summary judgment with respect to Count I of plaintiffs' complaint. Defendants argue in their summary judgment motion (1) that their products do not infringe upon plaintiffs' patent, and, in the alternative, (2) that plaintiffs' patent is invalid. For the reasons set forth below, the court finds that plaintiffs cannot prevail on their claim of infringement. Since the finding of non-infringement suffices to establish that defendants' motion for summary judgment on Count I should be granted, it will not be necessary to address defendants' claim that the patent is invalid.

### I. Background

Plaintiffs, both doctors of podiatry, hold a patent for a Dynamic Stabilizing Inner

Grant S. Palmer, Blank Rome Comisky & McCauley, Todd A. Schoenhaus, Blank

---

1. According to defendants' answer (Docket # 3), Johnston & Murphy is not an independent legal entity but the trade name under which Genesco markets its products.

Sole System (DSIS), an "orthotic device for preventing hyperpronation of a human foot [that] has a deep heel seat to cup the calcaneus and maintain it in approximately 5 degrees of varus, and high medial and lateral flanges which prevent lateral transverse drift of the first and fifth metatarsals."[2] U.S. Patent No. 5,174,052 (issued Dec. 29, 1992) ("The '052 patent"). Plaintiffs filed their patent application on January 3, 1991, and it was granted on December 29, 1992.

Shortly after filing their application for the >052 patent, plaintiffs contacted defendants to see if defendants would be interested in licensing the DSIS. On January 29, 1992, Fowler, Low, Johnston & Murphy's Chairman and CEO, signed a Confidential Non–Disclosure Agreement on behalf of Genesco according to which plaintiffs would provide defendants with information about their invention so that defendants could fully evaluate the feasibility and profitability of licensing DSIS. In consideration thereof, plaintiffs agreed to give Genesco exclusive rights to the licensing of DSIS for three years.

Negotiations between the parties continued through July 1994. Over this two-and-a-half year period, defendants' representatives met with plaintiffs five times. In April 1992, defendants made a prototype shoe with advice and consultation from the plaintiffs. Between December 1993 and July 1994, the parties exchanged draft license agreements. On July 7, 1994, defendants sent plaintiffs a letter stating that, in light of the continued failure of the two parties to agree on licensing terms, defendants would withdraw from the negotiations.

In the winter of 2002, Dr. Schoenhaus entered a Johnston & Murphy store and saw shoes that appeared (to him, at least) to copy plaintiffs' invention. This suit for patent infringement followed.

## II. Discussion

### a. Standard of Review

The standard according to which each party's arguments are assessed flows both from the general constraints on the granting of summary judgment motions and from the increased stringency with which such motions are reviewed in the patent litigation context. In general, summary judgment is available only when no genuine issue of material fact exists. Fed. R. Civ. Proc. 56(c). An issue is *genuine* where the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is *material* if it might affect the outcome of the suit under the governing law. *Id.* On a summary judgment motion claiming noninfringement, then, summary judgment in favor of the defendant is appropriate only "when no reasonable jury could find that every limitation recited in the properly construed claim [ ] is [ ] found in the ac-

2. The parties' memoranda helpfully describe these terms: Hyperpronation is the excessive flattening of the arch of the foot, which in turn causes inward rotation of the long bones connecting knee to ankle. The calcaneus is the heel of the foot; varus describes the tilt or inversion that the heel is made to undergo, with the angle of varus measured relative to the horizontal axis (i.e., the ground). The flanges are the walls of the insert. In the DSIS, these walls are high on both the medial and lateral sides (i.e., the inside and outside of the foot, respectively), and they extend roughly until the ball of the foot. In short, then, plaintiffs' invention protects against the inward rotation of the foot by placing the foot in a heel cup that is slanted upward from the outside of the foot toward the inside, so that gravity rotates the heel outward even while the tendency toward pronation would rotate the foot inward. Flattening of the foot is further curtailed by the insert's walls, which stabilize the foot along most of its length.

cused device." *Int'l Rectifier Corp. v. IXYS Corp.*, 361 F.3d 1363, 1369 (Fed.Cir. 2004) (internal citation omitted).

The moving party—defendants, in this case—bears the burden of establishing that there is no genuine issue of material fact, *see, e.g., Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), and the evidence is construed in favor of the non-moving party, *see, e.g., Int'l Rectifier Corp.*, 361 F.3d at 1369. Nonetheless, the non-moving party cannot defeat a summary judgment motion simply by alleging facts contrary to those that the moving party advances; instead, the non-moving party must support its allegations with affidavits or other evidence. *See, e.g., Crown Operations Int'l, Ltd. v. Solutia Inc.*, 289 F.3d 1367, 1375 (Fed.Cir.2002); *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*, 731 F.2d 831, 835–836 (Fed.Cir.1984);.

While "[s]ummary judgment is as appropriate in a patent case as in any other," 731 F.2d at 835, demonstrating entitlement to summary judgment in a patent case tends to be particularly difficult because patent disputes are generally very fact intensive, *see, e.g., Continuous Curve Contact Lenses, Inc. v. Rynco Scientific Corp.*, 680 F.2d 605, 606 (9th Cir.1982) ("Patent claims are ones in which issues of fact often dominate the scene and summary judgment is allowed only with great caution") (internal citations omitted).

b. *Claim Construction*

█ The first step in analyzing either a non-infringement or an invalidity claim is to provide a construction of the patent claims. *See, e.g., Dayco Prods. v. Total Containment, Inc.*, 258 F.3d 1317, 1324 (Fed.Cir.2001) (stating that patent infringement analysis requires two steps B first, construction of the patent and, second, application of that construction to the accused product); *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed.Cir.2001) ("Conceptually, the first step of an invalidity analysis based on anticipation and/or obviousness in view of prior art references is no different from that of an infringement analysis.").

█ In general, patent claim construction begins with the language of the claims, *see, e.g., Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed.Cir.1999), and there is a heavy presumption that the claims' words carry the meaning these would customarily bear for artisans of ordinary skill in the relevant art at the time of the invention, *see, e.g., 3M Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1370 (Fed.Cir. 2003). Sources of intrinsic evidence other than the patent claim language itself, which include the patent's specification and its prosecution history, can illuminate the meaning of the claim words where their meaning is ambiguous. *See, e.g., Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582–83 (Fed.Cir.1996); *York Prods. v. Central Tractor Farm & Family Ctr.*, 99 F.3d 1568, 1572 (Fed.Cir.1996). Extrinsic evidence, like dictionary definitions and expert testimony, may also be used, *see, e.g., Kopykake Enters. v. Lucks Co.*, 264 F.3d 1377, 1382 (Fed.Cir.2001), but it is less probative, and hence less authoritative, than intrinsic evidence, *see, e.g., Pickholtz v. Rainbow Techs.*, 284 F.3d 1365, 1372–73 (Fed.Cir.2002).

In the balance of this opinion, this court examines two aspects of plaintiffs' patent claim which plaintiffs contend are infringed by defendants' shoes. The first aspect said to be infringed is for a "deep rigid heel seat to cup the calcaneus." '052 Patent at 6:30–31. The second aspect is that the "heel cup [is] medially offset and laterally tilted by a sufficient amount to main-

tain the calcaneus in approximately 5 degrees of varus." *Id.* at 6:31–33.

### 1. *"[A] deep rigid heel seat to cup the calcaneus"*

■ Plaintiffs' patent claims "[a]n orthotic device ... comprising a deep rigid heel seat to cup the calcaneus...." '052 Patent at 6:30–31. Plaintiffs acknowledge that defendants' inserts do not meet the standard definition of the term "rigid" (*viz.*, inflexible). (Docket # 60, Ex. 36 at 8). They nonetheless insist that defendants' shoes infringe upon plaintiffs' patent. To this end, they advance two arguments: First, plaintiffs contend that the term "rigid" includes "semi-rigid" and that the latter term captures the accused products. Second, plaintiffs maintain that, no matter how "rigid" is defined, defendants' inserts so qualify once they are buttressed by other features of the accused shoes.

■ Defendants object to plaintiffs' revision of the meaning of the term "rigid" such that it would include "semi-rigid." Defendants are correct: While a patentee may act as her own lexicographer, her definitions will supplant those that ordinary practitioners in her field generally associate with a term's meaning only where she has "clearly set forth a different definition." *3M Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1371 (Fed.Cir.2003); *see also Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed.Cir.1996) ("A patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning, as long as the special definition of the term is clearly stated in the patent specification or file history.").

Plaintiffs' specification does make use of the term "semi-rigid," '052 Patent at 4:68–5:4,[3] but it does so in the course of describing a preferred embodiment of the invention; nowhere does the patent explicitly and clearly provide an alternate *definition* of "rigid." Moreover, descriptions of preferred embodiments of an invention are less probative of its scope than are descriptions that are not so designated, as the latter "describe[ ] an embodiment as being the invention itself, and not only one way of utilizing it." *Autogiro Co. of Am. v. United States*, 181 Ct.Cl. 55, 384 F.2d 391, 398 (1967). Thus, the fact that the term "semi-rigid" appears only in a description of a preferred embodiment of the invention entails that this feature is not essential to the invention itself.

■ Indeed, the prosecution history of plaintiffs' patent supports a finding that the patent covers *only* rigid orthotic devices. As a condition of granting plaintiffs' patent, the Patent and Trademark Office required that plaintiffs add the term "rigid" to the description of their invention. (Docket # 45, Ex. 8). While the patent's specification includes a description of a semi-rigid embodiment of the invention, *see* '052 Patent at 4:68–5:4,[4] the fact that the patent was granted only when it described the invention as rigid is dispositive here. As the court explained in *Unique Concepts, Inc. v. Brown*, 939 F.2d 1558 (Fed.Cir.1991), where a claim insists upon a feature (here, the rigidity of the heel cup of the orthotic device), but the specification includes a description of an alternative lacking that feature, plaintiff cannot turn around and maintain that a defendant in-

---

**3.** "In a preferred embodiment of the invention, an insert of the present invention is formed by molding semi-rigid material to the approximate shape as shown. This semi-rigid molding preferably has a varying rigidity, being more rigid and stiff at the heel cup and having somewhat less stiffness and rigidity towards the forefoot." '052 Patent at 4:68–5:4.

**4.** *See supra* note 3.

fringes upon his patent where defendant's product is like the alternative but lacks the element upon which the patent's claim insists. *Id.* at 1562. Otherwise, inventors could "escape examination of a more broadly-claimed invention by filing narrow claims and then, after grant, assert[ ] a broader scope of the claims based on a statement in the specification of an alternative never presented in the claims for examination." *Id.* In short, the term "rigid" in plaintiffs' claim should be construed as plain language requires—namely, as signifying a state of stiffness, or substantial inflexibility, that would not include "semi-rigid." Plaintiffs acknowledge that defendants' inserts do not meet that standard of rigidity.

■ Plaintiffs nonetheless argue that, when defendants' inserts are buttressed by the stiff shoe counter (i.e., the portion of the upper surrounding the back of the heel) of defendants' shoes, the resulting ensemble *is* rigid and, as a result, satisfies the rigidity requirement of plaintiffs' claimed invention. Plaintiffs' argument is unavailing. The patent specifically claims an "orthotic device ... comprising a deep rigid heel seat...." U.S. Patent No. 5,174,052 (Issued Dec. 29, 1992) at 6:29–30. Thus, it is the heel seat itself that must be rigid, and not the heel seat in conjunction with some other part(s) of the shoe.[5] Because plaintiffs have not established that defendants' heel seat alone is rigid, plaintiffs have not succeeded in countering defendants' claim of non-infringement with respect to this patent limitation. Accord-

ingly, the accused products cannot be said to infringe plaintiffs' patent.

2. *"[M]edially offset and laterally tilted by a sufficient amount to maintain the calcaneus in approximately 5 degrees of varus"*

■ Plaintiffs' patent claims a "heel cup [that is] medially offset and laterally tilted by a sufficient amount to maintain the calcaneus in approximately 5 degrees of varus." U.S. Patent No. 5,174,052 (Issued Dec. 29, 1992) at 6:30–33. Defendants maintain that their inserts do not rotate the heel (calcaneus) by anything close to five degrees and that their shoes thus cannot and do not violate plaintiffs' patent. Plaintiffs counter that their patent covers a footwear product whose body and insert or insole together embody the patent's features. Plaintiffs then argue that even if defendants' inserts do not provide 5 degrees of rotation, the accused products nonetheless *infringe* upon plaintiffs' patent because the inserts, together with the accused products' lasts, do provide the requisite rotation.

Even were the court to adopt plaintiffs' construction of the scope of the patent, such that elements of the shoe and insole together exhibited the features of plaintiffs' invention, the patent would still require that the insert/insole alone provide the 5–degree rotation. This is so because the patent claim explicitly states that it is the *heel cup* that is rotated to maintain the foot in 5 degrees of varus. '052 Patent at 6:31–33 ("said heel cup being medially offset and laterally tilted ... to maintain the

---

5. It is worth noting that this conclusion does not turn on the result of a dispute between plaintiffs and defendants regarding the object of the patent. That dispute has defendants arguing that the patented invention is only a shoe insert, and plaintiffs countering that their invention covers shoes whose body and insert (or insole) together incorporate all of

the invention's features. Even if plaintiffs are correct, however, a footwear product would infringe upon plaintiffs' patent only if, as the claim language states, the orthotic device contained in that footwear product "compris[ed] a deep rigid heel seat." That is not the case here.

calcaneus in approximately 5 degrees of varus"). Similarly, in describing the novel features of plaintiffs' invention, the patent specification states that the *"heel cup* [is] positioned in an inverted fashion." *Id.* at 3:30–31 (emphasis added). While the specification does contain a statement allowing other parts of the shoe to provide for rotation, *Id.* at 4:43–45,[6] the plain language of the patent claim is dispositive. *See Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1106 (Fed.Cir.1996) ("Subject matter disclosed but not claimed in a patent application is dedicated to the public.").

Once the patent is construed such that it is the heel cup alone that provides the rotation, then defendants prevail on their non-infringement claim. Defendants have provided evidence demonstrating that their inserts produce only minimal rotation—well below the 5 degrees plaintiffs' invention yields. (Docket # 45, Ex. 45C). Plaintiffs have sought to counter this evidence by saying that defendants' lasts provide some rotation and that, when the rotation that the lasts produce is added to that produced by the inserts, the results come very close to the recommended 5 degrees of varus. (Pl. Resp. Br. at 25–26). But, since plaintiffs' patent covers an invention whose heel cup *alone* must rotate the heel by 5 degrees, then a shoe, like defendants', whose heel cup does not rotate the heel by 5 degrees does not infringe plaintiffs' patent, and this would remain true even if other parts of the shoe did provide the requisite rotation. Thus, defendants' shoes do not violate plaintiffs' patent.

### III.  Conclusion

Since no reasonable jury could find that two of the limitations of plaintiffs' patent—its rigid heel seat and tilted heel cup—are present in the accused products, defendants' shoes do not infringe upon plaintiffs' patent. *See Int'l Rectifier Corp.*, 361 F.3d at 1369 (stating that a defendant will prevail on summary judgment "when no reasonable jury could find that every limitation recited in the properly construed claim [ ] is [ ] found in the accused device") (internal citation omitted). Accordingly, defendants' motion for summary judgment with respect to Count I is granted in an order accompanying this opinion.

---

**6.**  The statement in question reads: "When the insert of the present invention is placed in the shoe (*or the shoe is built to have the shape of* the interior of the insert), the calcaneus is given a 5 inversion." '052 Patent, at 4:43–45 (emphasis added).