# United States Court of Appeals for the Federal Circuit

05-1278


HAROLD SCHOENHAUS and RICHARD M. JAY,

Plaintiffs-Appellants,

v.


GENESCO, INC.
and JOHNSTON & MURPHY, INC.,

Defendants-Appellees.


Charles R. Wolfe, Jr., Blank Rome LLP, of Washington, DC, argued for plaintiffs-appellants. With him on the brief were Brian William Higgins, of Washington, DC; Grant S. Palmer and Todd A. Schoenhaus, of Philadelphia, Pennsylvania.

Mitchell G. Stockwell, Kilpatrick Stockton LLP, of Atlanta, Georgia, argued for defendants-appellees. With him on the brief were Vaibhav P. Kadaba and Pamela C. Mallari.

Appealed from: United States District Court for the Eastern District of Pennsylvania

Senior Judge Louis H. Pollak

# United States Court of Appeals for the Federal Circuit

05-1278

HAROLD SCHOENHAUS and RICHARD M. JAY,

Plaintiffs-Appellants,

v.

GENESCO, INC. and JOHNSTON & MURPHY, INC.,

Defendants-Appellees.

_____

DECIDED: March 15, 2006

_____

Before MICHEL, <u>Chief Judge</u>, GAJARSA and LINN, <u>Circuit Judges</u>.

MICHEL, <u>Chief Judge</u>.

Plaintiffs Harold D. Schoenhaus and Richard M. Jay appeal the decision of the United States District Court for the Eastern District of Pennsylvania granting summary judgment of non-infringement of their United States Patent No. 5,174,052 ("the '052 patent") to defendants Genesco, Inc. and Johnston & Murphy, Inc. <u>Schoenhaus v. Genesco, Inc.</u>, 351 F. Supp. 2d 320 (E.D. Pa. 2005). The district court correctly held that the limitations of claim 1 must be found in a removable orthotic insert, or the immovable insert portion of a shoe, and may not be provided by other parts of the construction of the shoe. Likewise, the district court correctly held that the "heel seat" of the removable insert or immovable insert portion must itself be "rigid", not rigid only in conjunction with the rear of the upper of the shoe, and not merely semi-rigid. Because

the district court correctly concluded as a matter of law that the rigidity limitation of claim 1 is missing from the insert portion of the accused shoe, we affirm.

I

Co-inventors Drs. Schoenhaus and Jay are co-owners of the '052 patent, entitled "Dynamic Stabilizing Inner Sole System". According to the abstract, the invention is directed to "[a]n orthotic device for preventing hyperpronation of a human foot", which is a condition involving excessive flattening of the arch of the foot, in which the foot rotates inwardly while a person is walking, causing problems such as heel spurs, bunions and hammertoes. The invention works by maintaining the heel bone in proper alignment relative to the leg, approximately five degrees of varus, and differs from the prior art in that it controls relative heel position entirely through the interior of the "heel seat", which cups the heel. In contrast, other orthotics provide heel inversion through portions of the shoe construction by incorporating, for example, an "extrinsic wedge" built into the shoe's insole that tilts the foot.

When the application that matured into the '052 patent was pending, plaintiffs contacted the defendants in an attempt to arrange a license. After the defendants signed a confidential disclosure agreement, the defendants made a prototype shoe using the invention and the parties exchanged draft license agreements. However, after two-and-a-half years, the defendants withdrew from negotiations. Eight years later, in 2002, Dr. Schoenhaus entered a Johnston & Murphy store and came upon what he believed to be an infringing line of footwear. The plaintiffs promptly filed suit against the defendants alleging infringement of the '052 patent, misappropriation of trade secrets,

05-1278                                    2

conversion, and unjust enrichment.  In response, defendants asserted a counterclaim of invalidity.

On January 10, 2005, the district court granted defendants' motion for summary judgment of non-infringement.  Senior Judge Louis H. Pollak did not issue a separate Markman order; rather, in a carefully-crafted summary judgment opinion, he construed two limitations of claim 1 of the patent and found as a matter of law that neither limitation was present in the accused shoes.  Id. at 324-26.  Accordingly, Judge Pollak entered final judgment under Federal Rule of Civil Procedure 54(b) in favor of defendants of non-infringement, dismissed defendants' counterclaim of invalidity as moot, and stayed further proceedings on the state law claims pending our review of the infringement question.  We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

II

The primary issue on appeal is whether the limitations of claim 1 of the '052 patent must be found in a removable orthotic insert or the immovable insert portion of a shoe, or whether some of the limiting features may be provided, at least in part, by other parts of the construction of the shoe.  Central to this dispute is the meaning of the phrase "orthotic device".[1]  Claims 1 and 2 of the '052 patent read in relevant part:

> 1.   An _orthotic device_ for preventing hyperpronation of a human foot comprising a deep rigid heel seat to cup the calcaneus, said heel cup being medially offset and laterally tilted by a sufficient amount to maintain the calcaneus in approximately 5 degrees of varus . . . .
>
> 2.   A footwear product having as an element thereof an _orthotic device_ as claimed in claim 1.

'052 patent, col. 6, ll. 29-42 (emphasis added).

---

[1]      The district court did not expressly construe "orthotic device", although its analysis clearly implied a particular construction of the term.

On appeal, plaintiffs argue that the district court erred in its claim construction. This court reviews the meaning and scope of patent claim terms for correctness as a matter of law, that is, without deference, or de novo. Cyber Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454 (Fed. Cir. 1998).

**A**

Plaintiffs contend that the phrase "orthotic device", and thus the scope of claim 1, is not limited to a "discrete insert (whether it be removable or immovable from a shoe)." Rather, they assert that an "orthotic device" means any "immovable or removable part or parts of an actual shoe that is designed to activate or supplement a weakened or atrophied limb or function."  In short, plaintiffs urge this court to adopt a claim construction that allows other parts of the shoe—not just the insert or immovable insert portion—to meet claim limitations.

In support of this argument, plaintiffs point to language in the specification that states that their "invention" is both an insert and a "shoe [ ] built to have the shape of the interior of the insert".  '052 patent, col. 4, ll. 44-45.  Plaintiffs' contention regarding the invention as disclosed is correct; however, the term "orthotic device", as used in the claims, has a specific meaning which must be determined from the intrinsic evidence. See Phillips v. AWH Corp., 415 F.3d 1303, 1317 (Fed. Cir. 2005) (en banc).  In other words, the question before this court is not what the invention covers, but whether the claim term "orthotic device", as used in the patent, and thus the subsidiary limitations of claim 1, such as "rigid heel seat", refer only to a removable orthotic insert or the immovable insert portion of a shoe, or more generally to a shoe built to have the shape of the interior of the insert.

We begin our analysis with the usage of the term "orthotic device" in the patent claims. The term appears in claims 1 and 2 of the patent, and there is a "presumption that the same terms appearing in different portions of the claims should be given the same meaning unless it is clear from the specification and prosecution history that the terms have different meanings at different portions of the claims." Fin Control Sys. Pty., Ltd. v. OAM, Inc., 265 F.3d 1311, 1318 (Fed. Cir. 2001). Using plaintiffs' proposed definition of "orthotic device", claim 1 would cover both an insert alone and a shoe built to have the shape of the interior of the insert. If the phrase "orthotic device" is interpreted consistently throughout the patent, then plaintiffs' proposed definition will only hold if, substituting either of the two proffered meanings in place of the phrase "orthotic device", claim 2 makes sense.

Claim 2 specifies "[a] footwear product having as an element thereof an orthotic device as claimed in claim 1." '052 patent, col. 6, ll. 41-42. Defining "orthotic device" as "insert or immovable insert portion", as suggested by defendants, claim 2 would read: "[a] footwear product having as an element thereof an [insert or immovable insert portion] as claimed in claim 1." This construction is logical. Defining "orthotic device" as a "shoe built to have the shape of the interior of the insert", as suggested by plaintiffs, claim 2 would read: "[a] footwear product having as an element thereof [a shoe built to have the shape of the interior of the insert] as claimed in claim 1." Obviously, a "shoe built to have the shape of the interior of the insert" cannot be considered "an element" of a footwear product. Thus, the latter definition of "orthotic device" renders claim 2 nonsensical. Accordingly, plaintiffs' proposed construction cannot be correct.

As such, we construe the term "orthotic device" to refer to a removable orthotic insert or the immovable insert portion of a shoe. We therefore hold that the subsidiary limitations of claim 1 must be found on the removable insert or immovable insert portion of the shoe, and may not be supplied by any other part of the shoe's construction. A shoe built to have the shape of the interior of the insert would infringe claim 1 only if the insert portion of the shoe contains the limitations required by claim 1. We turn now to the question of whether, viewed alone, the insert portion of the accused shoe contains the subsidiary limitations of claim 1.

**B**

The district court construed the term "rigid" of claim 1, as used in "a deep rigid heel seat to cup the calcaneus", to require the heel seat to be rigid on its own. As such, the court rejected the plaintiffs' assertion that the rigidity limitation was met because the "semi-rigid" insert effectively becomes "rigid" when viewed in conjunction with the rear portion of the upper of the shoe that surrounds the wearer's heel. Schoenhaus, 351 F. Supp. 2d at 324. As stated above, we define "orthotic device" to require that the rigidity be provided by the heel seat portion of the removable insert or immovable insert portion of the shoe, rather than by the rear heel portion of the upper of the shoe. Therefore, we reject plaintiffs' argument that the rigidity limitation is met by the semi-rigid insert in conjunction with the rigid rear heel portion of the upper of the shoe.

In the alternative, plaintiffs argue that the term "rigid" should be construed to include "semi-rigid". In support, plaintiffs point to written description language which states that the "insert . . . is formed by molding semi-rigid material", which "preferably has a varying rigidity, being more rigid and stiff at the heel cup and having somewhat

05-1278                                                      6

less stiffness and rigidity towards the forefoot." '052 patent, col. 4, l. 67 - col. 5, l. 4. Plaintiffs argue that although the preferred embodiment requires "more" rigidity at the heel cup, it does not require the heel cup to be "inflexible". Semi-rigid would suffice, they say, especially since that is the characteristic of the molding material from which the insert portion of the accused shoe is made.

The district court rejected plaintiffs' unusual interpretation of "rigid" as semi-rigid on two grounds. First, the court held that the specification language cited by plaintiffs was insufficient to "clearly set forth a different definition" from the conventional usage of "rigid" by ordinary practitioners in the field. Schoenhaus, 351 F. Supp. 2d at 324 (quoting 3M Innovative Props. Co. v. Avery Dennison Corp., 350 F.3d 1365, 1371 (Fed. Cir. 2003)). Second, the court noted that the prosecution history of the '052 patent supported a construction that the patent covered only orthotic devices with heel seats that are rigid. Id.

We agree with the district court. The patentee is free to act as his own lexicographer, and may set forth any special definitions of the claim terms in the patent specification or file history, either expressly or impliedly. Irdeto Access, Inc. v. Echostar Satellite Corp., 383 F.3d 1295, 1300 (Fed. Cir. 2004). Here, the patentee's usage of the phrase "semi-rigid material" in the specification, when referring to the material to be used in the manufacture of the orthotic device generally, is insufficient to disclaim the requirement in claim 1 that the material used to construct the "heel seat" be "rigid".

Moreover, the application's file history, the other place in which an inventor may lay out a special definition of a claim term, id., does not contain any evidence to support the plaintiffs' proposed alternative definition of "rigid". When the application that

matured into the '052 patent was submitted, claim 1 did not include the term "rigid" in reference to the "heel seat". The Patent and Trademark Office ("PTO") rejected plaintiffs' application, ruling the invention would have been obvious in light of certain prior art. The applicants argued against this rejection, and eventually added certain amendatory language to claim 1 in an attempt to overcome the rejection. However, the patent examiner still objected and agreed to issue the '052 patent only if the plaintiffs would adopt additional limitations suggested in an Examiner's Amendment, including the term "rigid".

Plaintiffs argue that because the patent examiner did not explain his rationale for requiring the term "rigid" in the Examiner's Amendment, the court has no basis from which to infer that the addition of this term is intended to limit the claimed invention to a "rigid" heel seat. This argument is unpersuasive. The Examiner Interview Summary Record clearly states that the plaintiffs "agreed to amend claim 1 as in attached [Examiner's Amendment] to overcome the previous rejection." The prosecution history reveals that claim 1 was rejected in conjunction with claim 6; although claim 6 did not issue as part of the '052 patent, it contained language relevant to claim 1 in that it specified "a deep heel seat to cup the calcaneus . . . the heelcup being more rigid than the flanges." The examiner originally rejected both claims as unpatentable in view of an article by Jay, U.S. Patent No. 4,232,457 ("Mosher") and U.S. Patent No. 4,446,633 ("Scheinhaus"). Mosher discloses a flexible orthotic insert, and the patent examiner explained that "it is inherent in the structure of Jay that the heel cup is more rigid than the flanges as claimed". This alone provides a reasonable basis from which a court could conclude that the amendment was related to avoiding the prior art.

However, we need not rely on this circumstantial evidence.  The Supreme Court, in discussing a situation where the PTO record did not reveal the reason for a claim amendment, has stated that "[w]here no explanation is established, . . . the court should presume that the PTO had a substantial reason related to patentability for including the limiting element added by amendment."  Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 32-33 (1997).  The Court explained that this presumption "gives proper deference to the role of claims in defining an invention and providing public notice, and to the primacy of the PTO in ensuring that the claims allowed cover only subject matter that is properly patentable in a proffered patent application."  Id. at 33-34.  If the additional limitation of rigidity in the Examiner's Amendment was improper or unnecessary, plaintiffs should have raised this issue by appeal before the PTO.  They did not.

The patentee, of course, is only entitled to protection of the claims as issued, not as filed.  As this court held in Unique Concepts, Inc. v. Brown, 939 F.2d 1558, 1562 (Fed. Cir. 1991), where a patent specification includes a description lacking a feature, but the claim recites that feature, the language of the claim controls.  In that case, the claim excludes the described embodiment, which is deemed dedicated to the public.  Id. at 1562-63.  Even interpreting the specification language to permit semi-rigid material elsewhere, the language of claim 1 requires that the heel seat portion of the orthotic device be "rigid".  Thus, plaintiff surrendered coverage of orthotic devices with semi-rigid heel seats.  Given plaintiffs' admission that the heel seat in the immovable insert portion of the accused shoe is only semi-rigid, the district court properly granted summary judgment of non-infringement on this ground.

The district court also held that no material factual dispute existed regarding the limitation "heel cup being medially offset and laterally tilted by a sufficient amount to maintain the calcaneus in approximately 5 degrees of varus". Schoenhaus, 351 F. Supp. 2d at 324. The parties disagree over whether expert testimony offered by the plaintiffs on this point in summary judgment papers is admissible, and whether certain language in the specification allows other parts of the shoe to provide the requisite five degrees of rotation. Because we have determined that the claim limitation requiring a rigid heel seat does not read on the immovable insert portion of the accused shoe, we need not determine whether a material factual dispute exists on these issues.

III

In sum, this court holds that an "orthotic device" must be defined as a removable insert or immovable insert portion of a shoe. Such a definition is required for a logical interpretation of claims 1 and 2 of the patent. The parties do not dispute that the immovable insert portion of the accused shoe, standing alone, does not meet the subsidiary limitation of claim 1 of a "rigid" heel seat. Neither the specification nor the file history of the application establishes a special meaning of the term "rigid" as used in claim 1. As such, a subsidiary limitation of claim 1 is not met, and the accused shoe does not infringe the '052 patent. Accordingly, the trial court's grant of summary judgment of non-infringement to the defendants must be, and is

AFFIRMED.