NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent. It is a public record.

# United States Court of Appeals for the Federal Circuit

04-1258

ALEX BELLEHUMEUR,

Plaintiff-Appellee,

v.

JEROME BONNETT (doing business as J.B. Marketing),

Defendant-Appellant.

_____

DECIDED: March 8, 2005

_____

Before MICHEL, Chief Judge, BRYSON, and LINN, Circuit Judges.

LINN, Circuit Judge.

Jerome Bonnett ("Bonnett") appeals from a judgment of the United States District Court for the Central District of California in favor of Alex Bellehumeur ("Bellehumeur") that Bonnett infringed U.S. Patent No. RE38,187 ("the '187 patent"). Bellehumeur v. Bonnett, No. CV 00-00863 RSWL (C.D. Cal. Aug. 8, 2003). Because we conclude that serious questions have been raised concerning prudential standing and the enforceability of the '187 patent, we vacate the judgment of infringement, the award of damages, and the permanent injunction; and we remand for further proceedings

consistent with this opinion. Further, because the district court clearly erred in finding this case to be exceptional, we <u>reverse</u> the award of attorney's fees.

I. BACKGROUND

A. <u>Prosecution History of the '187 Patent</u>

On January 4, 1994, U.S. Patent No. 5,275,410 ("the '410 patent") issued to three named inventors: Bellehumeur; John R. Nehmens, II ("Nehmens"); and Guy W. Haarlammert ("Haarlammert").

Subsequently, Bellehumeur individually filed continuation Application No. 08/590,870 ("the '870 application"), which was one in a series of continuations based on a divisional application of the '410 patent. The '870 application stated both that the application disclosed and claimed the same subject matter as in the prior application and that the inventors were the same. Following a rejection for obviousness-type double patenting, Bellehumeur filed a terminal disclaimer disclaiming any patent coverage beyond the expiration date of the '410 patent. Further, Bellehumeur filed a declaration under 32 C.F.R. § 1.132 that he invented the claimed invention of the '870 application before he contacted his co-inventors, and the claimed invention was "entirely [his] idea, not the idea of [his] co-inventors." The '870 application subsequently issued on January 28, 1997 as U.S. Patent No. 5,597,161 ("the '161 patent").

Bellehumeur took action to enforce the '161 patent in a separate proceeding captioned <u>Bellehumeur v. Lekavich</u>, No. CV 01-138-RSWL (Jan. 30, 2002). In that action, the district court held the '161 patent "unenforceable" based on the above declaration filed by Bellehumeur in regard to the '870 application claiming that he owned both that application and the parent '410 patent when, in fact, the two were not

04-1258                                    2

commonly owned.  The district court entered a judgment holding the '161 patent "invalid."  To overcome this ruling, Bellehumeur submitted an application to the United States Patent and Trademark Office ("PTO") to reissue the '161 patent.  In that application, he asserted, in a declaration filed by his attorney, that the '410 and '161 patents were in fact commonly owned on the date the terminal disclaimer was signed, but that title was not in Bellehumeur's name.  Rather, common ownership was held by a third party, Roller Hockey International, a California limited partnership ("RHI Partnership"), and that the mistake in the terminal disclaimer was inadvertent.

On July 15, 2003, the PTO reissued the '161 patent as the '187 patent.

### B.  Ownership of the '187 Patent

As noted previously, the '410 patent issued to three named co-inventors: Bellehumeur, Nehmens, and Haarlammert.  On January 1, 1996, Bellehumeur, Nehmens, and Haarlammert assigned to RHI Partnership "the entire right, title and interest in United States Letters Patent No. 5,275,410 and the pending foreign applications listed in Attachment A and any foreign patents issuing on said pending foreign applications . . . ."  At oral argument, Bellehumeur's counsel conceded that the January 1, 1996 assignment only expressly assigned the '410 patent, and not any subsequent continuation applications, and that no foreign applications were filed.

Based on the record before us, and the representations of Bellehumeur's counsel at oral argument, it appears that in 1998, RHI Partnership assigned all of its assets, including the '410 patent, to Roller Hockey International Inc., a Florida corporation ("RHI Corporation").

On July 16, 1999, RHI Corporation assigned "the entire right, title and interest of RHI [Corporation], domestic and foreign, in and to the inventions and discoveries in: 'PUCK FOR USE ON A NON-ICE SURFACE' set forth in United States Letters Patent No. 5,275,410 (the 'Patent'), and assigned to RHI [Corporation] . . ." to Bellehumeur and his wife, Linda Dryer-Bellehumeur.

The '161 patent issued to three named co-inventors: Bellehumeur, Nehmens, and Haarlammert. Similarly, the reissue '187 patent also issued to Bellehumeur, Nehmens, and Haarlammert—the three named co-inventors listed on the '410 and '161 patents. At oral argument, Bellehumeur's counsel conceded that there is no assignment of the '161 or '187 patents recorded at the PTO or in the record on appeal.

C. Procedural History

Bellehumeur sued Bonnett in January 2000 for infringement of the '161 patent. Following a bench trial, the district court found that Bonnett infringed. While the case was pending, Bellehumeur also sued Lekavich et al. in the Central District of California for infringement of the '161 patent ("Lekavich proceeding"). In the Lekavich proceeding, the district court concluded that the '161 patent was "invalid" because Bellehumeur had no legal interest in the '410 patent when the application was filed.

At the outset of the damages phase in this case, Bonnett filed a declaration requesting that the district court's ruling regarding the invalidity of the '161 patent in the Lekavich proceeding be applied to the present proceeding. The district court rejected Bonnett's argument, citing the intervening reissue of the '161 patent as the '187 patent. The court awarded Bellehumeur $107,826.96 in damages, $45,683.66 in attorney's fees, and issued a permanent injunction.

Bonnett appealed. This court has jurisdiction from the final judgment of the district court pursuant to 28 U.S.C. § 1295(a)(1).

## II. ANALYSIS

### A. Standard of Review

"It is well-established that any party, and even the court <u>sua</u> <u>sponte</u>, can raise the issue of standing for the first time at any stage of the litigation, including on appeal." <u>Pandrol USA, LP v. Airboss Ry. Prods., Inc.</u>, 320 F.3d 1354, 1368 (Fed. Cir. 2003) (internal citation omitted); <u>Warth v. Seldin</u>, 422 U.S. 490, 517-18 (1975) ("The rules of standing, whether as aspects of the Art. III case-or-controversy requirement or as reflections of prudential considerations defining and limiting the role of the courts, are threshold determinants of the propriety of judicial intervention."). "The question of standing to sue is a jurisdictional one, which we review <u>de</u> <u>novo</u>." <u>Rite-Hite Corp. v. Kelley Co.</u>, 56 F.3d 1538, 1551 (Fed. Cir. 1995) (en banc). "When standing is challenged on appeal after a final judgment on the merits, the appellate court determines standing based on an examination of the whole record." <u>Pandrol</u>, 320 F.3d at 1368.

> "The determination of whether a case is exceptional and, thus, eligible for an award of attorney fees under [35 U.S.C.] § 285 is a two-step process. First, the district court must determine whether a case is exceptional, a factual determination reviewed for clear error. After determining that a case is exceptional, the district court must determine whether attorney fees are appropriate, a determination that we review for an abuse of discretion."

<u>Cybor Corp. v. FAS Techs., Inc.</u>, 138 F.3d 1448, 1460 (Fed. Cir. 1998) (en banc) (internal citations omitted).

## B. Ownership and Standing

"The doctrine of standing limits federal judicial power and has both constitutional and prudential components." Media Techs. Licensing, LLC v. Upper Deck Co., 334 F.3d 1366, 1369 (Fed. Cir. 2001). Constitutional standing only requires that a plaintiff suffer an injury-in-fact, that there be a causal connection between the plaintiff's injury and a defendant's conduct, and that the plaintiff's injury be capable of redress by a favorable court decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Because Bellehumeur apparently was at least a co-owner of the '161 and the '187 patents, he had significant rights in those patents and thus would be injured by any party that infringed them. Thus, he apparently has constitutional standing to bring this lawsuit.

However, a question is presented as to whether prudential standing requirements have been met, given the absence of other co-owners of the '161 and '187 patents as parties to this lawsuit.[1] In the context of joinder of a patentee in a suit brought by an exclusive licensee, we have observed that "a patentee should be joined, either voluntarily or involuntarily, in any infringement suit"—a general rule that is "prudential rather than constitutional in nature." Prima Tek II, L.L.C. v. A-Roo Co., 222 F.3d 1372, 1377 (Fed. Cir. 2001). Similarly, "United States patent law . . . requires that all co-owners normally must join as plaintiffs in an infringement suit." Int'l Nutrition Co. v. Horphag Research Ltd., 257 F.3d 1324, 1331 (Fed. Cir. 2001); Ethicon, Inc. v. U.S. Surgical Corp., 135 F.3d 1456, 1468 (Fed. Cir. 1998) ("An action for infringement must

---

[1] We decline to consider whether collateral estoppel applies, even though raised by the parties, because of the question of prudential standing.

join as plaintiffs all co-owners."); see also Schering Corp. v. Roussel-UCLAF SA, 104 F.3d 341, 345 (Fed. Cir. 1997) ("Ordinarily, one co-owner has the right to impede the other co-owner's ability to sue infringers by refusing to voluntarily join in such a suit."). Thus, the failure to join other co-owners of a patent in a patent infringement suit implicates prudential standing concerns.

On appeal, Bellehumeur, the sole plaintiff in this proceeding against Bonnett, has failed to satisfy us that he exclusively owned all rights to the '161 patent and, in turn, the '187 reissue patent. Although patent assignments must be in writing, 35 U.S.C. § 261 (2000) ("Applications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing."), we can find no evidence of any written assignment of rights in the '161 patent or '187 reissue patent, either to Bellehumeur or any other parties in the record on appeal. At oral argument, Bellehumeur conceded that no written assignments of the '161 patent or '187 reissue patent exist. Because the '187 reissue patent, like the predecessor '161 patent, issued in the names of the three co-inventors with no assignment listed on the face of the patent, they are presumptively the owners of the '187 reissue patent. See Regents of Univ. of N.M. v. Knight, 321 F.3d 1111, 1119 (Fed. Cir. 2003) (observing that, unless assigned under 35 U.S.C. § 261, the "initial ownership of a patent vests in the inventor by operation of law"). As Bellehumeur's counsel conceded at oral argument, no subsequent assignment is in the record to contravene this understanding. However, Bellehumeur sued in his own right and did not join the other co-inventors of the '187 reissue patent, Nehmens and Haarlammert, as parties to the lawsuit.

At oral argument, Bellehumeur's counsel asserted that the three named co-inventors, Bellehumeur, Nehmens, and Haarlammert, intended in the January 1, 1996 assignment to transfer rights to the '161 patent (and thus the '187 reissue patent) to the RHI Partnership along with the '410 patent. Thus, Bellehumeur's counsel argues that because the '410 patent was eventually assigned back to Bellehumeur and his wife, the ownership of the '161 patent was also transferred. However, the January 1, 1996 assignment only assigns the invention claimed in the issued '410 patent, and the pending counterpart foreign applications. It lists no continuing or related domestic applications based on the '410 patent. At oral argument, Bellehumeur's counsel conceded that the '161 patent was not expressly mentioned in the January 1, 1996 assignment. Because patent rights must be transferred by written instrument, 35 U.S.C. § 261 (2000), any alleged intention by the named inventors of the '410 patent to transfer rights to the '161 patent is ineffective and is insufficient to establish Bellehumeur's standing. Moreover, even if the chain of title of the '161 and '187 patents was determined by the assignments of the '410 patent, there would still be a standing question due to the absence in these proceedings of Bellehumeur's wife.

Because Bellehumeur has utterly failed to satisfy us that he was the exclusive owner or assignee of rights in the '187 patent, we remand this case for the district court to examine the issue of prudential standing in the first instance.

## C. Enforceability

In its opening brief, Bonnett raised the issue of inequitable conduct, albeit as part of its argument on collateral estoppel. Although we do not address Bonnett's collateral

estoppel argument, we believe the unusual circumstances of this case justify further exploration by the district court of Bonnett's inequitable conduct defense.

To establish that a patent is unenforceable for inequitable conduct before the PTO, a challenger must establish "clear and convincing evidence of affirmative misrepresentations of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive." Alza Corp. v. Mylan Labs., Inc., 391 F.3d 1365, 1373 (Fed. Cir. 2004) (internal quotation marks omitted).

The '161 patent matured from the '870 application. In filing the '870 application in January 1996, Bellehumeur's patent counsel stated that the application "discloses and claims only subject matter disclosed in the prior application . . . and the inventor(s) in this application are the same." Bellehumeur, however, submitted a declaration that the claimed subject matter "was entirely my idea, not the idea of my co-inventors of the parent application which has matured into U.S. Patent No. 5,275,410." The '870 application was rejected on May 29, 1996 for obviousness-type double patenting. The examiner advised that a timely filed terminal disclaimer filed under 37 C.F.R. § 1.321(b) would overcome the rejection "provided the conflicting application or patent is shown to be commonly owned with the application." Bellehumeur filed a terminal disclaimer on June 5, 1996, in which he acknowledged: "The owner hereby agrees that any patent so granted on the instant application shall be enforceable only for and during such period that it and the prior patent are commonly owned." The record before us reveals that in March 1996, before Bellehumeur executed the terminal disclaimer for the '870 application, Bellehumeur and his co-inventors had assigned their rights in the parent

'410 patent, but not the '870 application, to RHI Partnership. Bellehumeur did not reacquire the rights to the '410 patent from RHI Partnership's successor-in-interest, RHI Corporation, until July 16, 1999.

In obtaining reissue of the '161 patent, Bellehumeur's patent counsel asserted to the PTO that Bellehumeur's statement in the terminal disclaimer that he was the 100% owner of the application was wrong and that the error was inadvertent. Bellehumeur's patent counsel remarked that

> [t]he parent patent '410 and the application which matured into the '161 patent were commonly owned by Roller Hockey International, a California limited partnership [RHI partnership] on June 5, 1996, the date of the Terminal Disclaimer. By way of assignments of the parent '410 patent, both patents after the '161 issued, have been commonly owned.

At oral argument, Bellehumeur's appellate counsel conceded that: (1) the rights to the continuing '870 application were not assigned with the '410 patent in March 1996; and (2) the rights to the '870 application or the '161 patent were never assigned. Thus, the statement by Bellehumeur's patent counsel in the '161 reissue proceedings that RHI Partnership owned both the '410 patent and '870 application at the time the terminal disclaimer was filed was incorrect.

Affirmative misrepresentations of a material fact, in this instance co-ownership of a patent application subject to a terminal disclaimer, can be grounds for finding a patent unenforceable for inequitable conduct. Because the record contains apparently false statements: (1) that Bellehumeur owned both the '410 patent and the '870 application which matured into the '161 patent when he filed the terminal disclaimer; and (2) that RHI Partnership commonly owned the '161 and '410 patents, questions of inequitable conduct remain unresolved as to the '187 reissue patent. Moreover, the record indicates that Bellehumeur's assertion during the prosecution of the '870 application that

he commonly owned the '870 application and parent '410 patent was perhaps not an inadvertent error without any deceptive intent. Furthermore, Bellehumeur's assertion in support of the reissue proceedings that RHI Partnership in fact commonly owned the '870 application and '410 parent patent when the terminal disclaimer was filed is also not supported by the record and also appears incorrect. Thus, we remand for the district court to determine in the first instance whether the '187 reissue patent is unenforceable based on inequitable conduct, including whether affirmative misrepresentations of a material fact were made with an intent to deceive. [2]

## D. Attorney's Fees

The district court found this case to be "exceptional" and awarded attorney's fees under 35 U.S.C. § 285, stating:

> In finding that Defendant [Bonnett] infringed Plaintiff's [Bellehumeur's] '410 patent in 1994, this court awarded damages and attorneys' fees. In this case, the same Defendant has been found to infringe against the same Plaintiff with a related patent. Additionally, Plaintiff has shown a desire to work with Defendant to reach a settlement without the cost or time expense resulting from litigation. Defendant did not cooperate in settling this matter, and continued infringing on Plaintiff's patent up to and including the time of trial. This justifies GRANTING Plaintiff attorneys' fees in the amount of $45,683.00.

Bellehumeur v. Bonnett, No. CV 00-00863 RSWL, slip op. at 5-6 (C.D. Cal. Aug. 7, 2003) (Order Granting Damages and Attorneys' Fees).

"A case may be deemed exceptional when there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation,

---

[2] We note that reissue proceedings are available to correct patents that are invalid or inoperative "through error without any deceptive intent." 35 U.S.C. § 251 (2000). We express no view as to whether a reissue proceeding may serve to correct a defect in a terminal disclaimer.

vexatious or unjustified litigation, conduct that violates Fed. R. Civ. P. 11, or like infractions." Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc., 393 F.3d 1378, 1381 (Fed. Cir. 2005). "Attorney fees are not to be routinely assessed against a losing party in litigation in order to avoid penalizing a party for merely defending or prosecuting a lawsuit, and are awarded to avoid a gross injustice." Revlon, Inc. v. Carson Prods. Co., 803 F.2d 676, 679 (Fed. Cir. 1986) (internal citation and quotation marks omitted).

The district court's first ground for finding the case exceptional, that Bonnett had previously been held to infringe a related patent owned by Bellehumeur and had attorney's fees assessed against him in that prior proceeding, was not a correct ground for finding the case to be exceptional. Basing an exceptional case determination on Bonnett's liability for infringing a different patent in a separate, prior proceeding in the absence of a finding of bad faith or vexatious litigation in the present case was clear error. See Sun-Tek Indus., Inc. v. Kennedy Sky Lites, Inc., 929 F.2d 676, 679 (Fed. Cir. 1991) ("Section 285 may be used to award attorney fees to prevent 'gross injustice' when a party has litigated vexatiously.").

The district court's second ground for finding the case to be exceptional, Bonnett's refusal to settle and continuing to infringe through trial, also contained clear error. Continued infringement through trial by itself, in the absence of a finding of willful infringement, cannot be the basis for finding a case exceptional. See Gustafson, Inc. v. Intersystems Indus. Prods., Inc., 897 F.2d 508, 511 (Fed. Cir. 1990) ("Nor is there a universal rule that to avoid willfulness one must cease manufacture of a product immediately upon learning of a patent, or upon receipt of a patentee's charge of infringement, or upon the filing of suit. Exercising due care, a party may continue to

manufacture and may present what in good faith it believes to be a legitimate defense without risk of being found on that basis alone a willful infringer." (internal citation omitted)).  Because the district court did not make any finding of willfulness, Bonnett's continued infringement alone cannot be the basis for finding the case exceptional.  Nor can refusal to settle, especially where validity and ownership are all under a cloud.

Because the district court clearly erred in finding this case to be exceptional, we reverse the award of attorney's fees.

III.  COSTS

No costs.